# EXHIBIT "A"

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                           CIVIL ACTION NO. 03-451-L2

GENERAL ELECTRIC MORTGAGE
INSURANCE CORPORATION,
                    Plaintiff,
                         Judgment Creditor

v.

CHENG-YIH HU,
Individually,
                    Defendant

and

SYSTEM COMMUNICATIONS, INC.,
                    Reach and Apply
                    Defendant,

### MOTION FOR DISSOLUTION OF ATTACHMENT AND TURNOVER OF PROPERTY

NOW COMES Ching-Yee M. Tsui ("Tsui") by her counsel, and moves this Honorable Court for the dissolution of an attachment and the proceeds therefrom to be turned over to her forthwith.

In support hereof, Tsui states as follows:

1.      Plaintiff commenced this case on January 31, 2003, by the filing of its complaint against the Defendant, Chen-Yih Hu.[1]

2.      After commencement of the case, on March 4, 2003, the Plaintiff brought an ex parte motion for attachment of real estate standing in the name of Tsui, or otherwise seeking a restraining order for relief regarding property located at 36 Russell's Way, Westford, Massachusetts ("the Property"). The motion was

---

[1] The Defendant is the estranged husband of Tsui. Tsui is the Defendant's second marriage.

supported by the affidavit of Plaintiff's counsel, and allowed ex parte by the Court on March 4, 2003.

3.    On July 22, 2003, Tsui caused to be filed a motion to dissolve or modify the real estate attachment which was scheduled for hearing on July 24, 2003.

4.    Notice was provided, and the Court conducted a hearing with opposition provided by the Plaintiff. At the urging of the Court, the parties reached a stipulation filed with the Court attached hereto and marked as Exhibit "1". The attachment, in relevant part, states as follows:

> The attachment of the Property located at 36 Russell's Way, Westford is discharged and dissolved, *subject to the provisions and language in this stipulation.*
>
> *
> *
> *
>
> Net proceeds from the sale after deduction of all sale expenses including broker's fees, attorney's fees, tax stamps and adjustments with the Buyers will be paid into a joint escrow account to be set up by counsel for the parties and held in interest bearing Citizens Bank pending a final judgment filed or to be filed concerning 36 Russell's Way.

(Emphasis is added)

5.    Subsequently, in the course of this case, when seeking to conduct discovery of Tsui, the Plaintiff caused to be filed a motion to compel deposition testimony of Tsui, which was heard with opposition on March 11, 2004.

6.    On that date, the Court denied the motion of the Plaintiff to compel deposition testimony and for sanctions, and specifically ordered as follows:

If ethically appropriate, counsel for Yee M. Tsui shall file a Motion to Dissolve the Attachment in compliance with Superior Court Rule 9A and the matter shall be scheduled for a hearing . . .[2]

7.      As of the present date, the Plaintiff has never filed any claim or cause of action against Tsui, or against the Property, or against the proceeds therefrom.

8.      Subsequent to the denial of the motion seeking to compel deposition testimony, counsel for the Plaintiff caused to be filed an action in the United States District Court for the District of Massachusetts, Case No. 04-11456-RWZ.[3] In that case, commenced against the Defendant's first wife, Chi Chen, the Plaintiff has once again sought to conduct discovery of Tsui, but without setting forth any claims against Tsui, the Property, or the proceeds therefrom.

### *Argument*

From the public record and the documents within this case, the Court can see that the retention of Property belonging to Tsui is improper, and without due process. Simply put, the attachment having been granted, the stipulation and the manner in which funds continue to be held, is just simply wrong. There is no judgment that could be rendered by this Court which would provide for the disposition of Tsui's Property presently held in escrow, all to the detriment of Tsui. In the absence of any claim, allegation or factual evidence that Plaintiff is entitled to property belonging to Tsui, these funds should be properly turned over to her, as her property, without delay.

---

[2]  In its order, the Court was referring to the attachment allowed ex parte as referred to in Paragraphs 2-4 above.

[3]  Chi Chen is alleged to be obligated to the Plaintiff under the same claims held by the Plaintiff in this case.

If the failure of the Plaintiff to set forth claims against Tsui, the Property or the proceeds from her property, is not enough, the public records that may be reviewed by the Court clearly show that the Plaintiff is trying to establish a case of guilt by association. Within the public records, as set forth in the Registry of Deeds, Tsui acquired the Property in her own name, individually, by deed dated August 27, 1998, recorded at Middlesex County (Northern District) Registry of Deeds at Book 9521, Page 152. A copy of said deed is attached hereto and marked as Exhibit "2".

The financing of the purchase price of $279,900.00 of the Property was accomplished by Tsui obtaining a mortgage in her own name in the amount of $209,900.00 dated August 28, 1998, which mortgage is recorded with the Middlesex County (Northern District) Registry of Deeds at Book 9521, Page 155. A copy of said mortgage is attached hereto and marked as Exhibit "3".

Finally, pursuant to the terms and provisions of the stipulation allowing the Property to be sold[4], Tsui sold the Property for $486,000.00 to an unrelated third party. A copy of the deed evidencing the transfer of the Property is recorded in the Middlesex County (Northern District) Registry of Deeds at Book 15854, Page 52 and is attached hereto as Exhibit "4".

### *Conclusion*

In summary, the Plaintiff has not set forth a claim against Tsui, but rather as a result of an initial error caused by the Court in granting an attachment against a non-party against whom no relief is sought other than the confiscation

---

[4] The Property was sold due to the fact that Tsui was unemployed and could no longer afford to retain the Property.

of property, which was in turn, compounded by the execution of a stipulation by initial counsel for Tsui.[5]

As such, these compounded errors, combined with the Plaintiff's failure to set forth a claim against Tsui, should not be allowed to stand.

### *Relief Requested*

As set forth herein, Tsui requests that this Court order that the funds held as proceeds of the attachment obtained by the Plaintiff be dissolved and funds turned over to her forthwith, along with such other and further relief as this Court deems just and proper.

Respectfully submitted,

Ching-Yee M. Tsui
By her attorney,

Dated: November 12, 2004

Michael B. Feinman
BBO#545935
Feinman Law Offices
23 Main Street
Andover, MA  01810
Tel: 978-475-0080
Fax: 978-475-0852
Email:mbf@feinmanlaw.com

04x3791\motionfordissolution.doc

---

[5] Initial counsel for Tsui, Eric L. Levine, Esq., was in the process of undergoing disciplinary proceedings by the Board of Bar Overseers, and on July 21, 2003, was suspended for a period of two years based upon a complaint commenced in 2002.  Tsui, a non-resident of Massachusetts, believes she may have received ineffective assistance from Mr. Levine.

# EXHIBIT 1

16

COMMOVNWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                    SUPERIOR COURT DEPT
                                 CIVIL ACTION NO.
GENERAL ELECTRIC MORTGAGE              03-451-L2
INSURANCE CORPORATION

          V.

CHENG-YIH HU
    AND
SYSTEM COMMUNICATIONS, INC.

          STIPULATION

1. THE ATTACHMENT OF THE PROPERTY LOCATED
   AT 36 RUSSELL'S WAY, WESTFORD IS
   DISCHARGED AND DISSOLVED, SUBJECT TO THE PROVISI
AND LANGUAGE IN THIS STIPULATION.

2. THE PROPERTY AT 36 RUSSELL'S WAY
   WESTFORD MAY BE SOLD FOR $486,000.00
   BY CHIN YEE M. TSUI TO DESHENG YIN AND
   SHULIAN YU PURSUANT TO THE EXISTING PURCHASE
   AND SALE AGREEMENT.

3. NET PROCEEDS FROM THE SALE ACTUAL AFTER
   DEDUCTION OF ALL SALE EXPENSES INCLUDING
   BROKER'S FEE'S ATTORNEY'S FEE'S TAX STAMPS

AND ADJUSTMENTS WITH THE BUYERS; WILL BE
PAID INTO A JOINT ESCROW ACCOUNT TO BE ~~INTERES~~ ~~BOANI~~
SET UP BY COUNSEL FOR THE PARTIES, PENDING AND HELD IN CITIZEN BANK
A FINAL JUDGMENT ~~REGARDING OWNERSHIP OF THE PROPERTY~~
~~PLAINTIFF AGREES EXISTS AND DISPOSITION OF THE~~
~~PROCEEDS~~ FILED OR TO BE FILED CONCERNING
36 RUSSELL'S WAY.

RESIDENTIAL

5. CHIN YEE M. TSUI AGREES TO PROVIDE HER ADDRESS
   TO PLAINTIFFS COUNSEL NO LATER THAN THE END OF
   THE DAY ON JULY 25, 2003.

6. ANY DEPOSITIONS SCHEDULED BY THE PLAINTIFF
   WILL BE HELD IN THE COMMONWEALTH OF MASSACHUSETTS

ERIC L LEVINE
BBO# 296600
8 WINTER ST.
BOSTON, MA 02108
617-423-1191

RICHARD W LANNETT
LANNETT + ASSOCIATES
ELEVEN BEACON ST
#425
BOSTON, MA 0218 - 301
(617) 367 - 0060 6
#184430

* ATTORNEYS FEES TO BE PAID TO ATTORNEY
ERIC L LEVINE ($5,000.00) AND RICHARD W. GANNETT
($5,000.00) FROM CLOSING PROCEEDS.

# EXHIBIT 2

B 0 9 5 2   P   5 2

## QUITCLAIM DEED

GREYSTONE, LLC, a duly organized limited liability company existing under the laws of the Commonwealth of Massachusetts, having offices at 143 R Main Street, Westford, Middlesex County, Massachusetts, 01886

in consideration of TWO HUNDRED SEVENTY-NINE THOUSAND NINE HUNDRED AND 00/100 ($279,900.00) DOLLARS,

grants to CHING-YEE M. TSUI, Individually, of 11 New Castle Drive, Apt. 7, Nashua, New Hampshire 03060

with **QUITCLAIM COVENANTS**

The land and buildings situated thereon located on Lot 27, in the Greystone Estates Subdivision, in the Town of Westford, Middlesex County, Commonwealth of Massachusetts, and being shown on the plan of land entitled: "Definitive Subdivision Plan of Land, Scale: 1" = 40' August 30, 1996 GREYSTONE ESTATES WESTFORD, MA Prepared for: E.Traywick Realty P.O. Box 1536 Westford, MA 01886 LANDTECH Consultants, Inc. Civil engineers, Land Surveyors, Project Management", which plan is recorded with Middlesex North District Registry of Deeds in Plan Book 194, Plan 148, Sheets 1 through 34, both inclusive. Lot 27 contains 31,517 square feet according to said Plan. Reference is hereby made to said Plan for a more particular description of the within granted premises.

Together with the right to use the streets and ways shown on the above described Subdivision Plan in common with all others entitled for all purposes for which streets and ways are commonly used in the Town of Westford, but specifically excluded from this conveyance is the fee interest in said streets and ways.

Said premises are subject to and with the benefit of the following:

Matters shown on the aforesaid Definitive Subdivision Plan entitled: "Definitive Subdivision Plan of Land, Scale: 1" = 40' August 30, 1996 GREYSTONE ESTATES WESTFORD, MA Prepared for: E.Traywick Realty P.O. Box 1536 Westford, MA 01886 LANDTECH Consultants, Inc. Civil engineers, Land Surveyors, Project Management".

A Certificate of Approval of the Definitive Subdivision Plan issued by the Town of Westford Planning Board dated May 5, 1997, recorded with said Registry at Book 8719, Page 77; and Certificate of Approval of an Amendment to a Definitive Plan dated July 14, 1997 and recorded with said Deeds at Book 8719, Page 89.

Special Permit for Open Space Residential Subdivision issued by the Town of Westford Planning Board, dated May 7, 1996 and recorded with said Deeds at Book 8116, Page 250.

Decision and Notice of Decision issued by the Town of Westford Zoning Board of Appeals recorded on July 10, 1996 with said Registry at Book 8116, Page 253.

Easement to New England Telephone and Telegraph Company dated September 15, 1997 and recorded with said Deeds at Book 8784, Page 218; Book 8784, Page 213; and again at Book 8784, Page 216.

Restrictions contained in Deed from Greystone Estates, Inc. To Bessie L. Lemasurier, Trustee, which deed is dated October 9, 1997 and recorded with said Deeds at Book 8846, Page 97.

Amendment to Development Agreement by and between the Water Department of the Town of Westford and E. Traywick Realty, Inc., dated October 9, 1997 and recorded with said Deeds at Book 8925, Page 46.

Grant of Right-of-way Easement and License from Greystone Estates, Inc. To Greystone LLC dated December 3, 1997 and recorded with said Deeds at Book 8936, Page 72.

This conveyance does not constitute all or substantially all of the assets of the grantor corporation.

Being a portion of the premises conveyed to the grantor by deed of Greystone Estates, Inc., dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 126. See also deed of Barbara F. Carye et al dated May 10, 1995 to the said Greystone Estates, Inc., recorded with said Registry of Deeds at Book 7486, Page 101.

IN WITNESS WHEREOF the said Greystone LLC has caused its seal to be hereto affixed and these presents to be signed, acknowledged and delivered in its name and behalf by Edward L. Traywick, its Member/Manager hereto duly authorized this 27 day of ___August___ in the year one thousand nine hundred and ninety-eight.



GREYSTONE LLC

by: _Edward L. Traywick /manager_
Edward L. Traywick, Member/Manager

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                                    _August 27_ ,1998

Then personally appeared the above named Edward L. Traywick, Member/Manager, as aforesaid and acknowledged the foregoing instrument to be the free act and deed of the said LLC,

before me, _____
- Notary Public
My Commission Expires: 4/28/2000

Decision and Notice of Decision issued by the Town of Westford Zoning Board of Appeals recorded on July 10, 1996 with said Registry at Book 8116, Page 257.

Decision and Notice of Decision issued by the Town of Westford Zoning Board of Appeals recorded on July 10, 1996 with said Registry at Book 8116, Page 262.

Decision and Notice of Decision issued by the Town of Westford Zoning Board of Appeals recorded on July 10, 1996 with said Registry at Book 8116, Page 266.

Order of Conditions issued by the Commonwealth of Massachusetts and the Town of Westford, DEP File No. 334-781 recorded on July 9, 1997 with said Registry at Book 8662, Page 135, as affected by Determination of Applicability recorded with said Registry at Book 8418, Page 98.

Easement to Massachusetts Electric Company dated July 17, 1997 and recorded with said Deeds at Book 8680, Page 37; and at Book 8900, Page 240.

Covenant with the Westford Planning Board dated August 11, 1997 and recorded with said Deeds at Book 8719, Page 71.

Release of Declaration of Restriction and Reciprocal Grant of Easement dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 75.

The "Greystone Estates" Subdivision Declaration of Covenants and Restrictions" dated August 8, 1997 and recorded with said Registry of Deeds at Book 8719, Page 88.

Greystone Estates Declaration of Covenants and Reservation of Common and Private Ways, dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 90.

Greystone Estates Declaration of Reservation of Easements and Roadways dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 95.

Declaration of Trail Easement "Greystone Estates" dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 99.

Greystone Estates, Inc. Declaration of Reservation of Conservation Restrictions dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 101.

Greystone Estates Declaration of Drainage Easements dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 111.

Greystone Estates Westford, MA. Declaration of Reservation of Access Easement dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 113.

Greystone Estates Subdivision Declaration and Covenant dated August 11, 1997 and recorded with said Deeds at Book 8719, Page 118.

# EXHIBIT 3

B 0 9 5 2 1 P I 5 5

**RECORDATION REQUESTED BY:**

Asian American Bank & Trust Company
68 Harrison Avenue
Boston, MA 02110

**WHEN RECORDED MAIL TO:**

Asian American Bank & Trust Company
68 Harrison Avenue
Boston, MA 02110

**SEND TAX NOTICES TO:**

Asian American Bank & Trust Company
68 Harrison Avenue
Boston, MA 02110

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on August 28, 1998.  The mortgagor is Ching Yee S. Tsui ("Borrower").  This Security Instrument is given to  Asian American Bank & Trust Company, which is organized and existing under the laws of the Commonwealth of Massachusetts and whose address is 68 Harrison Avenue, Boston, MA  02110 ("Lender").  Borrower owes Lender the principal sum of Two Hundred Nine Thousand Nine Hundred & 00/100 Dollars (U.S. $209,900.00).  This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2005.  This Security Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note;  (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and  (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in Middlesex County, Massachusetts:

See attached Exhibit A

which has the address of 36 Russell's Way, Westford, Massachusetts 01886 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
1. **Payment of Principal and Interest; Prepayment and Late Charges.**  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. **Funds for Taxes and Insurance.**  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property

**MASSACHUSETTS–Single Family**
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3022 9/90
(page 1 of 5 pages)

**FNMA/FHLMC MORTGAGE**
(Continued)

Insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3.  Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.  Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes

**FNMA/FHLMC MORTGAGE**
(Continued)

forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless

applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

08-28-1998
FNMA/FHLMC MORTGAGE
(Continued)

Page 5 of 5

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
Ching Yee N Tsui—Borrower

---

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH OF _Massachusetts_ )
) ss
COUNTY OF _Miootsey_ )

On this day before me, the undersigned Notary Public, personally appeared Ching Yee N. Tsui, to me known to be the individual described in and who executed the Mortgage, and acknowledged that he or she signed the Mortgage as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _28_ day of _August_, 19 _98_.

By _____ Residing at _Welpol_

Notary Public in and for the Commonwealth of _MA_  My commission expires _3/6/2003_

(Affix Notarial Seal)

Fixed Rate. Balloon.        LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.25a (c) 1998 CFI ProServices, Inc. All rights reserved. [MA—G203 E3.25 F3.25 P3.25 AA9832.LN R5.OVL]

B  0  9  5  2  1  6

# BALLOON RIDER
### (Conditional Right to Refinance)

THIS BALLOON RIDER is made this 28th day of August, 1998, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, Security Deed or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Asian American Bank & Trust Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

36 Russell's Way, Westford, Massachusetts 01886

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

## 1. CONDITIONAL RIGHT TO REFINANCE

At the maturity date of the Note and Security Instrument (the "Maturity Date"), I will be able to obtain a new loan ("New Loan") with a new Maturity Date of September 1, 2028, and with an interest rate equal to the "New Note Rate" determined in accordance with Section 3 below if all the conditions provided in Sections 2 and 5 below are met (the "Conditional Refinancing Option"). If those conditions are not met, I understand that the Note Holder is under no obligation to refinance or modify the Note, or to extend the Maturity Date, and that I will have to repay the Note from my own resources or find a lender willing to lend me money to repay the Note.

## 2. CONDITIONS TO OPTION

If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met as of the Maturity Date. These conditions are: (1) I must still be the owner and occupant of the property subject to the Security Instrument (the "Property"); (2) I must be current in my monthly payments and cannot have been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (3) no lien against the Property (except for taxes and special assessments not yet due and payable) other than that of the Security Instrument may exist; (4) the New Note Rate cannot be more than 5 percentage points above the Note Rate; and (5) I must make a written request to the Note Holder as provided in Section 5 below.

## 3. CALCULATING THE NEW NOTE RATE

The New Note Rate will be a fixed rate of interest equal to the Federal National Mortgage Association's required net yield for 30-year fixed rate mortgages subject to a 60-day mandatory delivery commitment, plus one-half of one percentage point (0.5%), rounded to the nearest one-eighth of one percentage point (0.125%) (the "New Note Rate"). The required net yield shall be the applicable net yield in effect on the date and time of day that the Note Holder receives notice of my election to exercise the Conditional Refinancing Option. If this required net yield is not available, the Note Holder will determine the New Note Rate by using comparable information.

## 4. CALCULATING THE NEW PAYMENT AMOUNT

Provided the New Note Rate as calculated in Section 3 above is not greater than 5 percentage points above the Note Rate and all other conditions required in Section 2 above are satisfied, the Note Holder will determine the amount of the monthly payment that will be sufficient to repay in full (a) the unpaid principal, plus (b) accrued but unpaid interest, plus (c) all other sums I will owe under the Note and Security Instrument on the Maturity Date (assuming my monthly payments then are current), as required under Section 2 above), over the term of the New Note at the New Note Rate in equal monthly payments. The result of this calculation will be the amount of my new

## 5. EXERCISING THE CONDITIONAL REFINANCING OPTION

The Note Holder will notify me at least 60 calendar days in advance of the Maturity Date and advise me of the principal, accrued but unpaid interest, and all other sums I am expected to owe on the Maturity Date. The Note Holder also will advise me that I may exercise the Conditional Refinancing Option if the conditions in Section 2 above are met. The Note Holder will provide my payment record information, together with the name, title and address of the person representing the Note Holder that I must notify in order to exercise the Conditional Refinancing Option. If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate based upon the Federal National Mortgage Association's applicable published required net yield in effect on the date and time of day notification is received by the Note Holder and as calculated in Section 3 above. I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership, occupancy and property lien status. Before the Maturity Date the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount and a date, time and place at which I must appear to sign any documents required to complete the required refinancing. I understand the Note Holder will charge me a $250 processing fee and the costs associated with updating the title insurance policy, if any.

MULTISTATE BALLOON RIDER
Single Family—Fannie Mae Uniform Instrument

Form 3180 12/89
(page 1 of 2 pages)

08-28-1998

**FNMA BALLOON RIDER**
(Continued)

Page 2 of 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)
Ching Yee M Tsui-Borrower

B 0 9 5 2 1    P 1 6 2

Exhibit A

The land and buildings situated thereon located on Lot 27, in the Greystone Estates
Subdivision, in the Town of Westford, Middlesex County, Commonwealth of
Massachusetts, and being shown on the plan of land entitled: "Definitive Subdivision
Plan of Land, Scale: 1" = 40' August 30, 1996 GREYSTONE ESTATES WESTFORD,
MA Prepared for: E Traywick Realty P.O. Box 1536 Westford, MA 01886
LANDTECH Consultants, Inc. Civil Engineers, Land Surveyors, Project Management",
which plan is recorded with Middlesex North District Registry of Deeds in Plan Book
194, Plan 148, Sheets 1 through 34, both inclusive. Lot 27 contains 31,517 square feet
according to said Plan. Reference is hereby made to said Plan for a more particular
description of the within granted premises.

Together with the right to use the streets and ways shown on the above described
Subdivision Plan in common with all others entitled for all purposes for which streets and
ways are commonly used in the Town of Westford, but specifically excluded from this
conveyance is the fee interest in said streets and ways.

For title reference, see deed recorded herewith.

# EXHIBIT 4

# QUITCLAIM DEED

I, CHING- YEE M. TSUI OF 36 RUSSELLS WAY, WESTFORD, MA,

For consideration of $486,000.00   GRANT TO Desheng Yin

Bk: 15854 Pg: 52   Page: 1 of 4
Recorded: 07/31/2003 10:13 AM

## With QUITCLAIM COVENANTS

The land an buildings situated thereon located on Lot 27, in the Greystone Estates Subdivision, in the Town of Westford, Middlesex County, Commonwealth of Massachusetts, and being shown on the plan of land entitled: "Definitive Subdivision Plan of Land, Scale: 1' = 40' August 30, 1996 GREYSTONE ESTATES WESTFORD, MA Prepared for: E. Traywick Realty P.O. Box 1536 Westford, MA 01886 LANDTECH Consultants, Inc. Civil engineers, Land Surveyors, Project Management", which plan is recorded with Middlesex North District Registry of Deeds in Plan Book 194, Plan 148, Sheets 1 through 34, both inclusive. Lot 27 contains 31,517 square feet according to said Plan. Reference is hereby made to said Plan for a more particular description of the within granted premises.

Together with the right to use the streets and ways shown on the above described Subdivision Plan in common with all others entitled for all purposes for which streets and ways are commonly used in the Town of Westford, but specifically excluded from this conveyance is the fee interest in said streets and ways.

Said premises are subject to and with the benefit of the following:

Matters shown on the aforesaid Definitive Subdivision Plan entitled: "Definitive Subdivision Plan of Land, Scale: 1"=40' August 30, 1996 GREUSTONE ESTATES WESTFORD, MA Prepared for: E. Traywick Realty P.O. Box 1536 Westford, MA 01886 LANDTECH Consultants, Inc. Civil engineers, Land Surveyors, Project Management."

A Certificate of Approval of the Definitive Subdivision Plan issued y the Town of Westford Planning Board dated May 5, 1997, recorded with said Registry at Book 8719, Page 77; and Certificate of Approval of an Amendment to a Definitive Plan dated July 14, 1997 and recorded with said Deeds at Book 8719, Page 89.

Special Permit of Open Space Residential Subdivision issued by the Town of Westford Planning Board, dated May 7, 1996 and recorded with said Deeds at Book 8116, Page 250.

Decision and Notice of Decision issued by the Town of Westford Zoning Board of Appeals recorded on July 10, 1996 with said Registry at Book 8116, Page 253.

MASSACHUSETTS EXCISE TAX
Middlesex North ROD #14 001
Date: 07/31/2003 10:13 AM
Ctrl# 005850 11535 Doc# 00092349
Fee: $2,218.18 cons: $486,000.00

Easement to New England Telephone and Telegraph Company dated September 15, 1997 and recorded with said Deeds at Book 8784, Page 218; Book 8784, Page 213; and again at Book 8784, Page 216.

Restrictions contained in Deed from Greystone Estates, Inc. To Bessie L. Lemasurier, Trustee, which deed is dated October 9, 1997 and recorded with said Deeds at Book 8846, Page 97.

Amendment to Development Agreement by and between the Water Department of the Town of Westford and E. Traywick Realty, Inc. and recorded with said Deeds at Book 8925, Page 46.

Grant of Right-of-way Easement and License from Greystone Estates, Inc. To Greystone LLC dated December 3,1997 and recorded with said Deeds at Book 8936, Page 72.

For Grantors= Title see Deed of Greystone, LLC. dated August 27, 1998, and recorded in Middlesex North Registry of Deeds, in Book 09521, Page 152.

Witness my hand and seals this 22ND 21st day of July 2003.

CHING- YEE M. TSUI

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA

Then personally appeared the above named Ching-Yee M. Tsui, as aforesaid and acknowledged the foregoing instrument to be her free act and deed.

Before me,
Notary Public

DEBORAH LIMON
Comm. # 1387859
NOTARY PUBLIC-CALIFORNIA
Santa Clara County
My Comm. Expires Feb. 22, 2007

## **ADDENDUM TO DESCRIPTION**

Decision and Notice of Decision issued by the Town of Westford Zoning Board of Appeals recorded on July 10, 1996 with said Registry at Book 8116, Page 257.

Decision and Notice of Decision issued by the Town of Westford Zoning Board of Appeals recorded on July 10, 1996 with said Registry at Book 8116, Page 262.

Decision and Notice of Decision issued by the Town of Westford Zoning Board of Appeals recorded on July 10, 1996 with said Registry at Book 8116, Page 266.

Order of Conditions issued by the Commonwealth of Massachusetts and the Town of Westford, DEP file No. 334-781 recorded on July 9, 1997 with said Registry at Book 8662, Page 135, as affected by Determination of Applicability recorded with said Registry at Book 8418, Page 98.

Easement to Massachusetts Electric Company dated July 17, 1997 and recorded with said Deeds at Book 8680, Page 37; and at Book 8900, Page 240.

Covenant with the Westford Planning Board dated August 11, 1997 and recorded with said Deeds at Book 8719, Page 71.

Release of Declaration of Restriction and Reciprocal Grand of Easement dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 75.

The "Greystone Estates" Subdivision Declaration of Covenants and Restrictions" dated August 8, 1997 and recorded with said Registry of Deeds at Book 8719, Page 88.

Greystone Estates Declaration of Covenants and Reservation of Common and Private Ways, dated August 8, 1997and recorded with said Deeds at Book 8719, Page 90.

Greystone Estates Declaration of Reservation of Easements and Roadways dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 95.

Declaration of Trail Easement "Greystone Estates" dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 99.

Greystone Estates, Inc. Declaration of Reservation of Conservation Restrictions dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 101.

Greystone Estates Declaration of Drainage Easements dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 111.

Greystone Estates Westford, MA . Declaration of Reservation of Access Easement dated August 8, 1997 and recorded with said Deeds at Book 8719, Page 113.

Greystone Estates Subdivision Declaration and Covenant dated August 11, 1997 and recorded with said Deeds at Book 8719, Page 118.