# EXHIBIT "1"



COPY

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

RECEIVED

APR 0 7 2005

GANNETT & ASSOCIATES

GENERAL ELECTRIC MORTGAGE )
INSURANCE CORPORATION, )
          Plaintiff, )
          Judgment Creditor, )
           )
vs. )   Civil Action No.
           )   04-11456-RWZ
CHI CHEN, A/K/A CHI CHEN HU, )
A/K/A TRACY CHEN, )
          Defendant, )
          Judgment Debor. )
           )

**RULE 65 HEARING**

BEFORE THE HONORABLE RYA W. ZOBEL
UNITED STATES DISTRICT COURT JUDGE

United States District Court
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
March 29, 2005
2:41 p.m.

* * * * *

CATHERINE A. HANDEL, CM
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5205
Boston, MA 02210
(617) 261-0555

```
 1 APPEARANCES:

 2 For the Plaintiff:

 3 Gannet & Associates
   (by Richard W. Gannett, Esq.)
 4 165 Friend Street
   Suite 200
 5 Boston, MA 02114-2025

 6

 7 For the Defendant:

 8 Law Offices of Michael B. Feinman
   (by Michael B. Feinman, Esq.)
 9 23 Main Street
   Andover, MA 01810
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S

 2              (The following proceedings were held in open court

 3    before the Honorable Rya W. Zobel, United States District

 4    Judge, United States District Court, District of Massachusetts,

 5    at the John J. Moakley United States Courthouse, 1 Courthouse

 6    Way, Boston, Massachusetts, on March 29, 2005.)

 7              THE COURT:  Who is here for the plaintiff?

 8              MR. GANNETT:  I am, your Honor.  Richard W.

 9    Gannett, G-a-n-n-e-t-t, on behalf of the plaintiff judgment

10    creditor, General Electric Mortgage Insurance Corporation.

11              MR. FEINMAN:  Good afternoon, your Honor.  Michael

12    Feinman, F-e-i-n-m-a-n, for -- my client is not even a party;

13    she is an interested party, Tsui.

14              THE COURT:  Let me ask you, Mr. Gannett, why are

15    there two lawsuits?  They're identical, aren't they?

16              MR. GANNETT:  Well, I don't think so, but I'll --

17              THE COURT:  What's the difference other than that

18    one is in state court and the other is in federal court?  And

19    somehow my state colleague and I seem to see it differently.

20              MR. GANNETT:  One is that in the beginning of this

21    case, in the state court, I asked Eric Levine, who was

22    representing Miss Tsui, if he would bring her in for a

23    deposition, since she had a contention, and under the state

24    court practice, I was entitled to take her deposition.  He made

25    it very difficult for me to take her deposition.  I gave him a
```

1   subpoena.  I had it served by a constable.  He claimed he

2   wasn't her agent, even though he was her attorney, in fact, and

3   had a written power of attorney to close on the house.  When I

4   -- as successor counsel, I had the same difficulty.

5   Ultimately, instead of my having to go to Hong Kong, which I

6   offered this Court the last time, we filed suit in the U.S.

7   District Court on the judgment.  It's our position that there

8   could be many suits in a judgment in order to satisfy an

9   underlying matter, and we were going -- and we did utilize the

10  worldwide service of process under the applicable federal

11  statute.  We had a motion practice about it.  We served the

12  subpoena utilizing -- from this Court to Hong Kong, and Miss

13  Tsui did not appear, and we had a hearing about this in

14  November of --

15              THE COURT:  I remember all that, but why are there

16  still two lawsuits?  Why are you proceeding in the state court

17  as well as here now?

18              MR. GANNETT:  Because --

19              THE COURT:  Because it does create a certain amount

20  of difficulty in that my state colleague keeps disagreeing with

21  me or --

22              MR. GANNETT:  Judge Chernoff has, essentially,

23  deferred to your Honor.  I have his ruling here.  And he's not

24  going to take any action on this matter subject to your Honor's

25  ruling disposition.  This was given to both of us on or about

1    March 9th, 2005.  Judge Paul Chernoff up in Lowell, your

2    Honor -- Mr. Fineman and I were present that day and we argued

3    the motion, and he, essentially, took no action, and I believe,

4    my interpretation, he's yielding to this Court.

5                (Attorney Gannett hands document to Court)

6                THE COURT:  Well, Judge Chernoff and I are somewhat

7    in agreement.  I mean, I don't see how I can issue an order to

8    turn over money to you without determining who is entitled to

9    it.

10               MR. GANNETT:  I'm not --

11               THE COURT:  That is as between the husband and the

12   wife, the current spouses.

13               MR. GANNETT:  But we had a motion to quash.  I

14   still have to get her deposition.  I don't know how to do that

15   other than to -- we had a lawfully-issued subpoena.  She moved

16   to quash it.  She sought sanctions against me --

17               THE COURT:  No, I understand all that.  But tell me

18   how I can decide that you're entitled to money where you are a

19   judgment creditor of Mr. Hu, but you seek it from Miss Tsui.

20               Now, I understand that you have difficulties, that

21   you have difficulties getting her deposition.  I mean, maybe

22   what you're saying is that she is claiming the money, but she

23   has, in effect, defaulted by failing to answer your subpoena. --

24               MR. GANNETT:  Yes, that's --

25               THE COURT:  Now, I don't know whether Mr. Hu, in

1   fact, has given up on this.

2            MR. GANNETT:  Well, I can't speak for him, but

3   all --

4            THE COURT:  I know that, but I need to consider

5   that.  I need to understand exactly what rights the various

6   participants have.

7            Now, as I understand it, at the time of the sale of

8   the property, it was in Miss Tsui's name.

9            MR. GANNETT:  That is correct, your Honor.

10           THE COURT:  She got it by deed from Greystone

11  Estates.

12           MR. GANNETT:  Yes.

13           THE COURT:  Who is Greystone Estates?

14           MR. GANNETT:  I would say they're a high-end

15  developer.

16           THE COURT:  So, she didn't get it from her husband,

17  Hu?

18           MR. GANNETT:  No, but it's our position that the

19  moneys, the down payment, came from him and all the moneys to

20  pay the mortgage came from him.

21           THE COURT:  How do we know that?  How do I know

22  that?

23           MR. GANNETT:  I believe in the papers, your Honor,

24  we have documents, tax returns, showing that Mr. Hu was the

25  bread winner.  They had joint tax returns.  They had joint tax

1    returns.  All the moneys came from Mr. Hu's business called

2    Systems Communication, Inc., and she listed that as saying

3    she's self-employed.  That was his stand-alone --

4              THE COURT:  What if he gave it to her?

5              MR. GANNETT:  I'm sorry?

6              THE COURT:  What if he gave her the property or

7    gave her the money to buy it, would you have a right to get it?

8              MR. GANNETT:  I still think that it is his

9    property.  I've been asking for this deposition for two years.

10   She's hiding behind a --

11             THE COURT:  I know.  I know that.  But for purposes

12   of entering a judgment, which is what you're asking me to do,

13   I'm having trouble understanding the basis for entering the

14   judgment that says that he really owns the property.

15             MR. GANNETT:  Well, we have a --

16             THE COURT:  Now, if he gave her the money or the

17   land, would you be entitled to a judgment now?

18             MR. GANNETT:  If it's still -- when you say "gave,"

19   as an outright gift?

20             THE COURT:  Yes.

21             MR. GANNETT:  Perhaps not.

22             THE COURT:  But how do I know that that's not what

23   happened?

24             MR. GANNETT:  Well, we don't, your Honor.

25             THE COURT:  Well, in that case, how can I enter a

1   judgment?  I very much -- Mr. Gannett, I really sympathize with

2   you.  I know you've been getting the run-around here.  I wish

3   there was a way to short circuit it.  I wish Mr. Feinman would

4   be helpful in doing that, but so far that hasn't happened.

5   Neither he nor his predecessors have been real helpful in this

6   case.  So, I really feel for you, and I would like to do the

7   right thing, which is -- the right thing is have her cough up

8   the money, but I can't say that it's his money, and he's your

9   creditor.

10          MR. GANNETT:  Okay.  Then if she's coming into this

11  Court filing pleadings, she has to answer to your Honor and to

12  this Court when she does that.  When she doesn't show up --

13          THE COURT:  But she hasn't filed anything.

14          MR. GANNETT:  She's filed everything.  She's filed

15  a motion to quash.  She's filed a motion for sanctions.  She's

16  filed all kinds of papers here, and she's filed them in state

17  court.  She's filed an affidavit.

18          THE COURT:  So, what I could do is to enter an

19  order to show cause why she is the rightful owner of this

20  property.

21          MR. GANNETT:  That might help.  And, moreover --

22          THE COURT:  Because if she doesn't, then I could

23  say that she failed to lay claim to the property and then it

24  must be her husband's and you can get it.

25          MR. GANNETT:  And part and parcel of that order be

1    that she appear in Boston for deposition to answer about her

2    contentions that -- she's had four lawyers --

3            THE COURT:  If she doesn't answer them, then she

4    gets defaulted.  If she doesn't follow the Court order, she

5    gets defaulted, I think.

6            What about that, Mr. Fineman?  Why could I not do

7    that?  She may not be a defendant, but she is before the Court

8    as an interested party and she has been ordered to do things by

9    the Court that she has utterly failed to do.

10           MR. FEINMAN:  If I may, your Honor, I think it

11   comes down to that which I alluded to in my opposition, which

12   is there's an issue -- and, you know, your Honor, I've only

13   been new to this case, relatively new.

14           THE COURT:  It doesn't matter.

15           MR. FEINMAN:  I understand.  I think there's a

16   significant problem of both procedure and substantive due

17   process because my client is not a party and there is no

18   allegation against my client that we can defend.  What is --

19           THE COURT:  Yes, there is.  The allegation is that

20   the property that stood in her name is not properly hers, that

21   she is, in effect, the owner of property belonging to her

22   husband.

23           MR. FEINMAN:  But, your Honor, is that by resulting

24   trust, by constructive trust, by fraudulent transfer, by

25   agency?  There is absolutely -- I have no idea what to defend,

1  and this is what I've been trying to say both in this Court --

2          THE COURT:  Well, tell me what you want Mr. Gannett

3  to do.  You know, he has a right --

4          MR. FEINMAN:  I understand that.

5          THE COURT:  Whether she is a party or a witness, he

6  has a right to examine her and she has absolutely thwarted

7  every attempt that he has made to do that.

8          MR. FEINMAN:  My last discussion with

9  Mr. Gannett -- and I understood the issue about his service of

10  the subpoena in this Court.  I had asked Mr. Gannett if he

11  would provide to me evidence of the return of service.

12          THE COURT:  Oh, come on.

13          MR. FEINMAN:  No.  No.  In light of this Court's

14  denial of the motion to quash, if I saw the return of service,

15  which I have not been provided, I could advise Miss Tsui she

16  has no other choice but to appear.  I haven't had the

17  opportunity to give her that advice because I've been waiting

18  for a copy of the return of service.  Now --

19          THE COURT:  Are you suggesting when he told you

20  that he had served her in accordance with the rule, that he had

21  not?

22          MR. FEINMAN:  No.  No.  No.  Your Honor, I'm not

23  alluding anything.  The tone that I bring to this case is

24  totally different than what Mr. Levine brought to this case,

25  your Honor.  I don't suggest that at all, and I would not have

1    come into this Court arguing for sanctions against Mr. Gannett

2    the way Mr. Levine did.

3            What I come in saying is that I would like to have

4    that document to present it to my client so that maybe I -- I

5    am quite confident, your Honor, based upon my information that

6    I have about this case, that I can beat him on the merits on --

7            THE COURT:  Then why not do it?

8            MR. FEINMAN:  But I have no problem with that so

9    long as I can see the return of service.  I would love to just

10   see that, present it to my client, and say, "Here it is, here's

11   the order from the Court, you need to appear."  That's the only

12   link that I need.

13           MR. GANNETT:  It's on Pacer, Judge.  It's a public

14   record.  Anyone with access to Pacer -- it's everywhere in the

15   world.  This is not a secret.  Your Honor already ruled.  We

16   did exactly what your Honor asked us to do.  It's in the Pacer

17   documents.  You can go online and see it.  We're not hiding

18   anything.

19           MR. FEINMAN:  I didn't know that he filed his

20   return with the Court.  If it is with the Court, I can get it

21   on Pacer or you can provide it to me, one or the other.

22           But coming back to it, your Honor, why could --

23   there is a significant due process issue here as to that.  I'm

24   being asked to defend in the dark, really.

25           THE COURT:  No.  I mean, at the moment, as I

1   understand the pleadings, it is that she is named as an

2   interested party.  Mr. Gannett is trying to find out precisely

3   what her interest is and whether she or the judgment creditor

4   owns the property that he's looking for, and he has

5   appropriately tried to depose her, and she has inappropriately

6   avoided being deposed.

7           So, now, because she is named, because she was

8   served, I'm ordering her to show cause why she -- you know,

9   what evidence she has that she is the proper owner of this

10  property.  If she is the proper owner, he has no right to get

11  it away from her.  If she is not, then maybe he does.  He still

12  has to show it's Mr. Hunt's property, or whose -- or whatever

13  his name is.

14          MR. FEINMAN:  I suppose that --

15          THE COURT:  But at the moment, she's in default of

16  an order of the Court, and that is what I'm hanging my hat

17  on -- I hope that I'm hanging my hat on for the next order that

18  I'm proposing, unless you tell me that there is something

19  seriously wrong with this, but I don't think so.

20          MR. FEINMAN:  But, again, your Honor --

21          THE COURT:  She's getting lots of process, due and

22  otherwise.

23          MR. FEINMAN:  Well, she is getting lots of process,

24  but the problem, again -- and I don't want to beat a dead horse

25  on this -- is that now the Court's ruling creates a second

1    challenge and that is, if I understand correctly, that the

2    burden has now shifted to my client.

3            THE COURT:  Well, yes, because she won't come

4    forward to answer questions that she has an obligation to

5    answer if properly served.

6            MR. FEINMAN:  If there could be some type of a

7    framework or limitation or something set up where I understand

8    the nature of the allegations -- your Honor, we could go

9    through this process and in the absence of a complaint, in the

10   absence of claims or allegations specifically, if Mr. Gannett

11   loses, he still continues in the Superior Court, because --

12   where is res judicata?  Where is this --

13           THE COURT:  Judge Chernoff is deferring to this

14   Court at the moment.  That's very clear.

15           MR. FEINMAN:  Well, actually, when we were before

16   Judge Chernoff, when we were arguing this case before Judge

17   Chernoff, I provided him with a copy of my opposition that you

18   have filed with this Court.

19           THE COURT:  Are you going to say she's going to

20   appear in the Superior Court --

21           MR. FEINMAN:  No.  No.  No.  Here what --

22           THE COURT:  -- but she won't appear in this Court?

23   Are you saying she's going to appear in this Court?

24           MR. FEINMAN:  I'm saying, in response to this

25   Court's order, I don't know that she has any choice.

1    THE COURT:  That's the position I want to put her

2    in.  I want her to answer the questions.

3    MR. FEINMAN:  I understand the point.  What I'm

4    simply trying to say is with regard to -- Judge Chernoff has

5    set forth -- on Page 5 of my opposition, I stress to the Judge

6    that there was a danger of inconsistency of decisions because

7    the question as you pose to Mr. Gannett, this is the same

8    defendant, the same judgment, the same claim in two different

9    courts.

10    THE COURT:  There will not be an inconsistency of

11    position because if Mr. Gannett prevails here, he will dismiss

12    the state court case.

13    MR. FEINMAN:  If he doesn't prevail in this Court,

14    again, what happens in the state court case?

15    THE COURT:  If he doesn't prevail here and she

16    appears and answers questions and he loses because I don't

17    believe the facts, he'll still dismiss the state case, right?

18    MR. GANNETT:  Yes, your Honor.

19    MR. FEINMAN:  So, in other words, we'll have a

20    single adjudication?

21    THE COURT:  We'll have a single adjudication.

22    MR. FEINMAN:  And it will be here?

23    THE COURT:  It will be here unless Mr. Gannett

24    decides to go back to the state court, in which case it won't

25    be here.

```
 1            MR. FEINMAN:  I think --

 2            THE COURT:  He gets one adjudication, period.

 3            MR. FEINMAN:  Okay.  That seals it, your Honor,

 4   because I almost felt like you took from the left and gave to

 5   the right.

 6            THE COURT:  No.  It's one, either here or there,

 7   your choice.

 8            MR. GANNETT:  Here, your Honor.  And I believe

 9   Judge Chernoff concurs.

10            MR. FEINMAN:  Again --

11            THE COURT:  So, now the question is, how do we get

12   it done?  I believe that what I suggested would work, but I

13   don't know why I'm doing counsel's work.

14            MR. FEINMAN:  Well, I'd be glad to contact my

15   client in light of the Court's order today, and, again, I still

16   believe that we can prevail on the merits.  I was --

17            THE COURT:  That's a separate question.

18            MR. FEINMAN:  I understand.

19            THE COURT:  There has to be some kind of an

20   evidentiary determination of her right to own the property, her

21   right to the property.

22            MR. FEINMAN:  Yes.

23            THE COURT:  And whether it's hers or whether it's

24   Mr. Hu's, that's the ultimate question underlying this lawsuit,

25   and if she's prepared to come in here and persuade this Court
```

1   that she does own it free and clear by however she got it and

2   that, therefore, Mr. Hu has no right whatever to it, and

3   because he has no right to it, General Electric has no right to

4   it, that that's the end of the case on that.  If, on the other

5   hand, I'm not persuaded that she has a proper claim to it such

6   that the property really does belong to Mr. Hu, then General

7   Electric is entitled to reach it.  I think that's the -- it's a

8   simple matter except that it has become exceedingly complicated

9   and expensive.

10        MR. FEINMAN:  Yes, your Honor.  I think that the

11  problem that I try to raise -- the problem that I try to

12  address, not raise, is that the plaintiff's complaint in this

13  case and in the Superior Court case -- and perhaps your order

14  today resolves that -- does not state a claim that I know what

15  to defend.  It does not state a claim that I can -- when

16  subsequent claims come up --

17        THE COURT:  All she has to do is tell us how she

18  got the property, what she paid for it or what the

19  circumstances were.  That's all.

20        MR. GANNETT:  Your Honor --

21        THE COURT:  And I think it's up to the plaintiff to

22  show that, in fact, it belongs to Mr. Hu.  So, she is, in that

23  sense, a defendant, but until she comes here -- I mean, the

24  reason I'm putting it in terms of almost putting the burden on

25  her is because she has refused to answer because she has not

1  answered the proper process and orders of this Court.  So, she

2  is to come and defend the claim that this is not her property.

3  That's it.  And that's all.  The burden of proof remains with

4  the plaintiff to show that it is really Mr. Hu's money that he

5  is looking for and not hers.

6           MR. FEINMAN:  Okay.  I hear the position.  The only

7  other procedural question, again -- last procedural question, I

8  promise -- is in light of the fact that my client is not a

9  party, does my client have a right to a jury trial claim?

10 Again, we're not a party.  How do I claim --

11          THE COURT:  You're an interested party.

12          MR. FEINMAN:  Can I claim a --

13          THE COURT:  In the first instance, I think she

14 needs to come and explain, but she has failed to explain so

15 far, and then we can decide how the issue is to be ultimately

16 resolved, whether by jury trial or otherwise.  I mean, Mr. Hu

17 is a defendant, isn't he?

18          MR. GANNETT:  Yes.

19          MR. FEINMAN:  Yes.  He has not bothered to defend

20 in this action at all, not -- I don't believe he's here.  I'm

21 not sure that he's been required to appear in any form by

22 subpoena or summons.

23          THE COURT:  Well, I would be happy to listen to

24 counsel's arguments and suggestion as to how we resolve the

25 ultimate issue as to whether GE is entitled to it, but in the

1    first instance, it is important that she answer what she has

2    been asked and provide the details as to how she got this

3    property.  The plaintiff is entitled to know that, and once he

4    knows that, the plaintiff might very well decide to give up on

5    the case or he might decide to pursue it.  If he decides to

6    pursue it, I totally agree with Judge Chernoff, there has to be

7    an evidentiary hearing, and if the parties think there should

8    be a jury trial on that, we can have a jury trial.

9              MR. FEINMAN:  Thank you, your Honor.

10             MR. GANNETT:  In terms of mechanics, your Honor --

11   I heard what the Court said.  In terms of that she has to show

12   cause here, are you suggesting there be a show cause hearing in

13   the nature of an evidentiary --

14             THE COURT:  I believe so, because if she doesn't

15   appear, then, although she is only an interested party, I'm

16   inclined to say that you're entitled to the money because she's

17   not following the Court's orders.  So, as a sanction for

18   refusing the Court's order, if nothing else, you're entitled to

19   get the money.

20             MR. GANNETT:  Okay.  Then what about prior to this

21   show cause hearing, am I entitled to take her examination and

22   have her produce the documents we've requested of her for two

23   years, more than two years?

24             THE COURT:  Why don't we say she has a choice; she

25   either comes to a deposition and explains it or she comes into

1     court and explains it.

2          MR. FEINMAN:  You're very persuasive, your Honor.

3          THE COURT:  Play with that, Mr. Gannett.

4          MR. GANNETT:  Okay.

5          MR. FEINMAN:  Would you like a deadline for a

6     status report of some sort?

7          THE COURT:  Yes.  What do you suggest?

8          MR. GANNETT:  March 29th.

9          THE COURT:  Well, no.  It has to be a little bit

10     further up, no.  We need to set a date for a show cause

11     hearing, which, at Miss Tsui's election, can be turned into a

12     deposition in Massachusetts.

13          MR. GANNETT:  Okay.  I like that, Judge.  That's

14     good.

15          THE COURT:  Give me a date, Mr. Feinman.

16          MR. FEINMAN:  You know, your Honor, I've got a

17     brand-new toy and I'm having a hard time getting used to this.

18          THE COURT:  Do you want to look at my calendar?

19          MR. FEINMAN:  Here, I have it.

20          THE COURT:  My guess is we're looking at two to

21     three weeks out.

22          MR. FEINMAN:  So, we're looking for a date,

23     correct?

24          THE COURT:  We're looking for a date for a show

25     cause order, which can be turned into a deposition at her

1    election.

2          MR. FEINMAN:  I see.

3          THE COURT:  At a date earlier than the show cause

4    order, not later.

5          MR. FEINMAN:  I see.  Well, my suggestion would

6    be -- based upon my last conversation with her, I prefer if we

7    could put this out about at least four weeks.

8          THE COURT:  Why?

9          MR. FEINMAN:  Well, because I know she's been

10   traveling for a new job, for training for her new job, and

11   where she is exactly right now, I don't know.  I reach her

12   sometimes by phone and sometimes by e-mail and sometimes she's

13   just so wrapped up in her training, that I can't get a hold of

14   her even by e-mail.  I would --

15         THE COURT:  How about April 20th or 21st?  Lisa,

16   what can we do?

17         THE CLERK:  We can do -- what about the 21st?

18         THE COURT:  21st, at what time?

19         THE CLERK:  We have a hearing at 9:00 on that

20   morning.  Do you want to do it at 9:30 or do you want to do it

21   in the afternoon?

22         (Off record discussion)

23         THE COURT:  2 o'clock on the 21st.

24         MR. FEINMAN:  April 21, 2 p.m.?

25         THE COURT:  April 21, at 2 o'clock, show cause.

1    And you will let us know before then if she chooses to have a

2    deposition and, presumably, you'll work things out at that

3    point.

4                    MR. FEINMAN:  Yes.

5                    MR. GANNETT:  Now, there's just one other little

6    piece in this, Judge.  I don't want to belabor this, but this

7    alternative argument here about these people seem to be doing

8    very well on the money markets here and whether or not Mr. Hu

9    still owns them, I would ask trustee process issue for each of

10   these named money markets appended to the motion here.

11                   THE COURT:  You mean a restraining order from

12   disposing of them?

13                   MR. GANNETT:  Yes, to the extent that they still

14   own them.  I don't know, but they owned them when they bought

15   that house.

16                   THE COURT:  What other security do you have at the

17   moment?  You have the amount in escrow, don't you?

18                   MR. GANNETT:  Yes, Citizens Bank account, myself

19   and Mr. Levine in Norwood --

20                   THE COURT:  How much --

21                   MR. GANNETT:  $212,000.

22                   THE COURT:  That's about all you're owed, isn't

23   it?

24                   MR. GANNETT:  Oh, no.  This has gone way beyond

25   that.  This case has been going -- this case is almost 20 --

1          THE COURT:  What was the original judgment?

2          MR. GANNETT:  Oh, about $130,000, $140,000.  That

3     was years ago.  I mean, they've -- the attorney's fees on this

4     case has just been mushrooming enormously.

5          THE COURT:  Well, how do we know that there is

6     still -- that this money is still there?

7          MR. GANNETT:  I don't know, Judge.

8          THE COURT:  Is it in her name or his name?

9          MR. GANNETT:  I think it's in his name because it

10    was listed as --

11         THE COURT:  Well, if you'll give me an order that

12    attaches moneys that are in Mr. Hu's name, you're entitled to

13    that as the judgment creditor of Mr. Hu.

14         MR. GANNETT:  Okay.  That I can submit.

15         THE COURT:  Right.

16         MR. FEINMAN:  I don't represent Mr. Hu.

17         THE COURT:  So, there you are.

18         MR. GANNETT:  Okay.  Great.  Thank you, your Honor.

19         MR. FEINMAN:  Thank you, your Honor.

20         THE COURT:  I'll send you a bill.

21         MR. FEINMAN:  Thank you so much, Judge.

22         THE COURT:  Thank you very much.

23              (Adjourned, 3:09 p.m.)

24

25

1

2

## CERTIFICATE

I, Catherine A. Handel, Official Court Reporter of

3    the United States District Court, do hereby certify that

4    the foregoing transcript, from Page 1 to Page 23,

5    constitutes to the best of my skill and ability a true

6    and accurate transcription of my stenotype notes taken

7    in the matter of Civil No. 04-11456-RWZ, General

8    Electric Mortgage Insurance Corporation v. Chi Chen.

9

10

11    _4-6-05_____     _____
      Date                   Catherine A. Handel, RPR-CM

12

13

14

15

16

17

18

19

20

21

22

23

24

25