UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11456-RWZ

|  |  |
|---|---|
| GENERAL ELECTRIC MORTGAGE INSURANCE CORPORATION, | ) ) ) ) |
| Plaintiff, Judgment Creditor, | ) ) ) |
| v. | ) ) |
| CHI CHEN A/K/A CHI CHEN HU, A/K/A TRACY CHEN CHENG YIH HU, a/k/a MICHAEL HU, | ) ) ) ) ) ) |
| Defendants Judgment Debtors. | ) ) ) ) |

## GENERAL ELECTRIC MORTGAGE INSURANCE CORPORATION'S OPPOSITION TO RULE 11 MOTION AND CLAIM UNDER 28 U.S.C. SEC. 1927

### ORAL ARGUMENT REQUESTED

Richard W. Gannett ("Gannett") respectfully submits the following opposition and

objection with incorporated memorandum of law to non-party Ching Yee M. Tsui's motion for

sanctions under Fed. R. Civ. P. 11 and any claim under 28 U.S.C. sec. 1927. In further support

of this opposition Gannett states as follows:

## INTRODUCTION

This lawsuit arises from a judgment entered against Cheng Yih Hu and Chi Chen by the

Middlesex County Superior Court and in favor of General Electric Mortgage Insurance

Corporation ("GEMIC"). The value of the judgement exceeds $300,000.00 exclusive of interest post-judgement attorney's fees. During March 2003 GEMIC filed a suit on its judgment and at the same time sought a special attachment under Massachusetts G. L. c. 223 sec. 67. This Massachusetts statute permits creditors to attach real property of debtors standing in the name of third parties. In addition, during March 2003 GEMIC sought to conduct the deposition of non-party Ching Yee M. Tsui. GEMIC was successful on its motion whereby the Massachusetts Superior Court issued a special attachment which was duly recorded and served by the Middlesex County Deputy Sheriff.

In addition, the Massachusetts Superior Court implicitly found on March 4, 2003, by issuing the special attachment, that there was a reasonable likelihood of success on the merits by GEMIC concerning its claims against Ching Yee M. Tsui as pled in its complaint, supporting affidavit and materials filed on January 31, 2003 with the Massachusetts Superior Court. Exhibit A.

On July 24, 2003, an order was entered in the Massachusetts Superior Court permitting the specially attached property at 36 Russell's Way to be sold to a third party for $486,000.00 with the balance, less final adjustments and certain court-approved attorney's fees, to be deposited in a bank account at Citizens Bank of Massachusetts. Said attached funds remain on deposit today. In addition on July 24, 2003, the Massachusetts Superior Court ordered Ching Yee M. Tsui to provide her residential address to GEMIC's counsel and further ordered that any depositions concerning Tsui be conducted in the Commonwealth of Massachusetts.

2

GEMIC contends that it is Ching Yee M. Tsui who has been acting with deliberate slowness and has been uncooperative[1]. There is no basis or rationale for GEMIC to be multiplying or delaying the proceedings when GEMIC is the one that has been harmed and GEMIC is merely trying to satisfy a lawful Massachusetts judgment, a perfectly proper purpose to be a litigant.

Tsui's Rule 11 motion fails to comply with the procedural requirements of Federal Rule of Civil Procedure 11. With reference to the motion under 28 U.S.C. sec. 1927 it seeks sanctions, for *inter alia* alleged misconduct which occurred: in various Massachusetts Superior Court proceedings that were a necessary prelude to the within action; and (2) in connection with a Massachusetts Superior Court lawsuit naming judgment debtors Chi Chen Hu and Cheng Yih Hu and a confederate of Chi Chen Hu, Gloria Shiao. Tsui's assertions concerning GEMIC's multiplication of the proceedings concern state court actions for which Tsui has never been named a party. GEMIC asserts that state court actions cannot be considered in analyzing a claim under 28 U.S.C. sec. 1927, especially when Tsui was never a party to those proceedings. While it is true that GEMIC has now filed suit against Tsui, GEMIC commenced said action on the same day, August 4, 2005, it filed a motion in this Honorable Court to cancel or adjourn the August 15, 2005 hearing. When this Court issued its order concerning GEMIC's options, this Honorable

---

[1] United States District Judge Zobel stated on the record on March 29, 2005 that GEMIC and Gannett "....have been getting the run-around here...." and that "Neither he [Atty. Feinman] nor his predecessors have been helpful in this case...." Transcript p. 8 03/29/05 hearing. The Court also stated on 03/29/05 that ".... [Tsui] has been ordered to do things by this Court that she has utterly failed to do..." 03/29/05 Transcript p. 9. In addition the Court has been alluding to sanctions against Tsui for some time when her behavior was deemed uncooperative: ".... because if she [Tsui] doesn't appear, then, although she is only an interested party, I'm inclined to say that you [GEMIC] are entitled to the money because she's [Tsui] not following the Court's orders. So as a *sanction* for refusing the Court's order, if nothing else, you're entitled to get the money." 03/29/05 Transcript p. 18. Emphasis supplied.

Court was aware that GEMIC had commenced a Massachusetts Superior Court action naming

Tsui, as the complaint was an exhibit to the motion, and GEMIC seeks **one** trial concerning its

allegations.

Finally as to alleged conduct occurring in the context of this court, Tsui has not carried

her burden to prove that sanctions are warranted. Accordingly, the motion should be denied with

prejudice.

## I. RECENT PROCEDURAL HISTORY

On May 24, 2005, GEMIC learned that Tsui had initiated a divorce action in the Santa

Clara County Superior Court, San Jose, California. (See divorce papers attached as Group

Exhibit B). During June and July, 2005, GEMIC learned that contrary to Tsui's representations,

she fled Massachusetts with Cheng Yih Hu, Tsui's husband, not from him, according to Attorney

Andrew H. Wu, the former California divorce attorney for Cheng Yih Hu. In addition, GEMIC

learned during June and July, 2005 from Attorney Wu, that Cheng Yih Hu and Tsui purchased a

house together in the Silicon Valley. At Tsui's deposition on May 24, 2005, she testified under

oath that she was unemployed, was subsisting on gifts from relatives and unemployment

compensation from the Commonwealth of Massachusetts. Tsui testified under oath that she did

not know where Cheng Yih Hu lived nor where he was employed. When GEMIC obtained

certain of Tsui's divorce papers during July 2005, GEMIC discovered that Tsui informed the

Santa Clara Superior Court when she initiated her divorce action in January, 2005, Hu's

residence and his place of employment and his exact salary. Put another way, Tsui knew

everything about Hu in the divorce action but claimed to know next to nothing in the deposition

scheduled before this Court. The divorce papers also reveal that her sworn assets are $9,000.00.

4

Given these new facts, it was entirely reasonable and proper for GEMIC to join and prosecute its claims against Tsui in one forum, namely, the Massachusetts County Superior Court, especially when this Honorable Court focused the evidentiary hearing upon the Westford property and the discovery concerning the Amended Complaint. (See pages 19 through 25 of hearing date of April 21, 2005, attached). Neither this Honorable Court nor GEMIC's counsel knew shortly before May 24, 2005 that Tsui was residing in California for a substantial period of time she claimed she was in Hong Kong, and that Hu and Tsui bought another house together.

It is to Tsui's advantage to conduct an evidentiary hearing before the facts revealed above were made known to GEMIC. Tsui has engaged in a campaign to secrete her true relationship with Cheng Yih Hu. Recent additional facts learned concerning Tsui's and Hu's California purchase of the Silicon Valley property buttresses GEMIC's allegations plead during early 2003 in the Massachusetts Superior Court which found sufficient facts to warrant an attachment. GEMIC recognizes that it has the burden of proof and wishes to carry it. On the other hand, this Honorable Court should take into consideration the fact that Tsui has misrepresented her theory of the case which GEMIC only discovered after her deposition of May 24, 2005. California witnesses and the California divorce pleadings demonstrate that Hu and Tsui were working as a team until very recently and that it is simply not credible for anyone to believe that Tsui was fleeing from an abusive husband but then purchased a second property in the Silicon Valley and resided there with Hu as husband and wife.

5

It would not be beneficial to GEMIC given the California witnesses[2] and facts recently learned, that have dramatically changed the landscape, to require that claims against both properties be separated and not tried together in one forum after adequate discovery. Tsui has undertaken extraordinary measures to keep her true relationship with the judgment debtor hidden from GEMIC for many years. Throughout certain aspects of the Superior Court matter, Tsui's representatives made numerous representations that Tsui was residing in Hong Kong when in fact according to her divorce papers, she was residing in San Jose, California. Tsui was under an obligation by a court order to disclose her true address to GEMIC's counsel. It was Tsui, not GEMIC, who lengthened the proceedings by forcing GEMIC to seek measures to conduct Tsui's deposition in Hong Kong, China thereby needlessly wasting GEMIC's resources in pursuing a deposition in Hong Kong, China.

GEMIC conducted the May 24, 2005 deposition pursuant to the April 21, 2005 hearing and as noted in the transcript regarding same. During the April 21, 2005 hearing this Court envisioned that GEMIC would be able to ask Tsui any question raised in any pleading or amended pleading. GEMIC strictly complied with this directive of April 21, 2005 when it delivered an amended complaint to Tsui's counsel on the day of the deposition and leave of court was granted to file said amended complaint over Tsui's objection.

During the Show Cause Hearing held on April 21, 2005, the extent of the deposition of Ching Yee M. Tsui was discussed. GEMIC understood from this hearing that it was entitled to

---

[2] These witnesses include but are not limited to Attorney Andrew H. Wu, the developer/seller of the Silicon Valley property, the Silicon Valley loan broker/lender, the selling agent of the Silicon Valley property, Ivan Hu, son Michael Hu, a student at the University of California at Berkeley and governmental agencies charged with keeping records of residential data.

6

conduct an examination of Tsui regarding any facts pled in any Amended Complaint. The

transcript includes the following:

*****

| | |
|---|---|
| THE COURT: | I mean, the pleadings have to govern the case because that's all we have. So, whatever the pleadings suggest is what the deposition can do. |
| MR. FEINMAN: | I'd be satisfied with that, your Honor, that direction. |
| MR. GANNETT: | Well, I think that there's much more than these people have together than the Chelmsford property and I anticipate instructions not to answer. For instance, you have Systems Communication, which is the source of this–the source of the funds for that house. She claims she's a co-owner of that, of that entity. That's Michael Tsui's stand-alone business, has been since the 80's. So, I can see that we're going to have instructions not to answer or this is not part of the case. That's where I see this going and there is –we have sent Miss Tsui the subpoena. We sent it to Mr. Levin and Mr. Levine with 31 documents for the riders. Now, this has been part of the case since September 22nd, when she was supposed to be at the Mass. Bar Association and she didn't show up, with no notice to me. I just sat there for an hour or more doing nothing. |
| THE COURT: | Okay. The complaint recites that on October 5th, 2000, the Massachusetts Superior Court entered the judgment in the amount of \$202,000, plus some, against Tracy Chen, who is, I guess– |
| MR. FEINMAN: | Wife one. |
| THE COURT: | –wife one, arising from various obligations from Tracy Chen's ownership. So, it's not the husband. It's wife number one who is the judgment debtor, according to the complaint. |
| MR. GANNETT: | Well, the judgment debtor is also wife–is also the husband. |
| THE COURT: | It doesn't say that. |
| MR. GANNETT: | Then I'll amend it, Judge, but that's –but that is clearly what's going on in this case and it's– |
| THE COURT: | It may be clear to you, but it surely isn't clear to me. |
| MR. GANNETT: | Well, I'll draft a very explicit detailed factual basis. |
| THE COURT: | You don't have to make it detailed. You just have to make it accurate. I mean, this complaint is against Tracy Chen alone for an interest in property that she had and the judgment that arose out of that interest. That's what this case is about. It doesn't mention the husband at all. |
| MR. GANNETT: | I'll amend it. |
| THE COURT: | The deposition shall cover only such matters as are covered in the pleadings and the pleadings will have to be served by that time in |

order for them to understand what it is that they're subject to. I
mean, this is a mess, sorry to say.

So, do we understand each other about the deposition? And the
deposition is to be limited to the issues that are raised by the
pleadings, properly raised in the pleadings.

MR. FEINMAN:    And right now that stands just as the Chelmsford property, is that–

THE COURT:      That's what it says.

MR. FEINMAN:    Thank you, your Honor.

THE COURT:      All right.

MR. FEINMAN:    Thank you very much for your assistance.

During a lobby conference with this Honorable Court during the fall of 2004, GEMIC

offered to travel to Hong Kong, at its own expense, to conduct Tsui's deposition. Tsui was

residing in the Silicon Valley house in San Jose, California or in Holmdel, New Jersey at or near

the time of the lobby conference, a fact which Tsui should have disclosed to all concerned.

GEMIC's theory that Cheng Yih Hu is an owner of the 36 Russell's Way and Silicon

Valley properties and proceeds thereon is buttressed by Hu's own verified pleadings in the 2005

divorce action in Santa Clara County, San Jose, California, where he is claiming 50% of the

marital estate, including these properties. Moreover, the notion that each spouse will in fact be

receiving 50% of the marital estate has been informally forecasted by the Santa Clara Superior

Court when it awarded on a 50/50 basis some $30,000.00 in marital funds from a Smith Barney

account that was in Hu's name alone. While it is true that this division is without prejudice to

the ultimate finding by the California Superior Court, it appears beyond any credible dispute that

given the mix of community property (California) and equitable distribution (Massachusetts)

backdrop, Hu will be receiving a very significant distribution given the fact that the evidence

adduced thus far points to the fact that he was the chief breadwinner in this marriage and his

8

business, Systems Communication, Inc., was the principal funding source of 36 Russell's Way,

Westford, Massachusetts, a fact which Judge Billings utilized to allow the attachment.

## II. **FACTUAL AND PROCEDURAL BACKGROUND**

A. The Massachusetts Superior Court has already allowed an attachment of 36 Russell's Way where findings were made that GEMIC has a reasonable likelihood of success on the merits, including its claim that judgement debtor, Cheng Yih Hu.

Tsui's current motion claims that GEMIC's activity in the U.S. District Court is without

foundation. Tsui's claim is completely defeated by Massachusetts Superior Court's allowance of

GEMIC's motion to attach the 36 Russell's Way, Westford, Massachusetts property. Moreover,

in violation of the *Rooker-Feldman* doctrine, Tsui may very well be impermissibly attempting to

re-litigate the initial propriety of the attachment motion which has already been provisionally

decided against Tsui. In addition, because some or all of the claims raised by Tsui in her latest

filings may very well be finally adjudicated in the Santa Clara Superior Court, this Court should

decline to hear this matter. *Rago v. Samaroo* 344 F. Supp.2d 309 (D. Mass. 2004) (District

Court action essentially concerning domestic relations subject to dismissal). In the likely event

the Santa Clara Superior Court determines that Hu is entitled to 50% of the community property

estate and 50% of the equitable distribution estate, Tsui's contentions here will be rendered moot

under the *Rooker-Feldman* doctrine as well. This Court may wish to abstain from any further

rulings or hearings until the divorce action concludes.

9

B.     GEMIC attempted on numerous occasions to conduct Tsui's deposition and on
       each occasion was rebuffed by her

It is well known that GEMIC has been attempting to depose Tsui for almost 2 ½ years

prior to May 24, 2005. See no-show transcripts of 2003 and 2004. GEMIC contends that a

significant portion of the reported $38,000.00 Tsui defense fee by Eric L. Levine and Kenneth M.

Levine has been devoted to having Tsui avoid GEMIC's deposition. These charges were brought

to light in a lawsuit filed by Kenneth M. Levine against Ching Yee M. Tsui and Michael B.

Feinman to collect Levine's legal fee in the Brookline District Court. GEMIC has requested that

certain proceedings be transcribed of the Brookline proceedings. GEMIC has paid a statutory fee

in order to obtain the tapes.  It intends to have them transcribed and be submitted as additional

evidence to buttress its opposition and GEMIC requests that these transcripts be included upon

receipt GEMIC.   The process is lengthy and additional time is necessary to complete the task.

To paraphrase Atty. Levine: his primary task was keep Tsui away from a GEMIC deposition.

GEMIC contends this is an admission by Tsui that she is prolonging the proceedings not GEMIC.

Given the facts recently adduced by GEMIC and the fact that Tsui was residing in the

United States when she claimed in numerous representations  she was residing in Hong Kong,

China, a reasonable person could never say that GEMIC was multiplying the proceedings when

Tsui's attorney admitted, even bragged, that Tsui was  the one making it difficult for GEMIC to

conduct a simple deposition.


C. Tsui cannot state that GEMIC in elongating the proceedings where GEMIC has
repeatedly sought to submit the within controversy to mediation for some two and half
years and  Tsui has rebuffed all efforts at mediation.

10

At deposition, Tsui was asked if she was aware that GEMIC was willing to conduct mediation before a neutral since March of 2003. She replied that she was unaware of that. It is undisputed that many letters were delivered to Tsui's attorney, Eric L. Levine, asking for mediation. It is well known that mediation in a case of this nature may achieve a faster resolution. GEMIC stands by that statement today. Based upon GEMIC's offer to conduct mediation, GEMIC is not prolonging the matter but is attempting to end it.

Since the inception of the Superior Court lawsuit, GEMIC has attempted to conduct mediation. Numerous letters were sent by GEMIC to Atty. Eric L. Levine, Tsui's former attorney to conduct mediation. Even though this controversy appears ripe for mediation, Tsui never consented; at deposition, it is unclear if Tsui was cognizant of GEMIC's repeated efforts at mediation. It is axiomatic that if GEMIC has been initiating mediation it cannot be culpable for prolonging the lawsuit.

> D. Contrary to Tsui's averments that the Massachusetts Superior Court denied discovery to GEMIC, the Massachusetts Superior Court merely denied use of the attached money to travel to Hong Kong, China and never denied discovery

While it is true the Superior Court denied use of the attached money for travel expenses to Hong Kong, China where Tsui claimed she lived, the Superior Court never denied discovery, nor could they. During this time period GEMIC contends Tsui and Hu were together and not at odds. Attempts by GEMIC to go to Hong Kong would have been abandoned had Tsui disclosed her residential address, as the Superior Court ordered here to do. Tsui has increased the cost of litigation by allowing GEMIC to file pleadings to travel to a city where she knew she did not

11

reside. It would have save everyone time and expense if Tsui had merely adhered to the order and disclosed her address allowing discovery to proceed.

E.    At certain hearings Tsui claimed on the record that she was having difficulty defending herself because GEMIC did not frame the issues against her and she had no idea as to the nature of the charges brought against her.

GEMIC has now brought suit against Tsui in the Massachusetts Superior Court and consistent with due process she can defend herself. During the March 29, 2005 hearing Tsui voiced a concern that she did not know the allegations against her. See March 29, 2005 transcript pp. 13, 16. GEMIC has now alleviated any Tsui concern over the nature of the allegations by the filing of the Superior Court action on August 4, 2005 and nonsuiting the within action.

## III. LEGAL ARGUMENT

### A. **The motion for sanctions is patently untimely**

The motion for Sanctions is clearly untimely and procedurally defective. Under Federal Rule of Civil Procedure 11(c)(1)(A), any motion for sanctions must be served at least 21 days prior to filing the motion so as to allow the respondent a reasonable opportunity to cure the alleged violation. Moreover, it is well settled that any motion for sanctions, whether brought pursuant to Rule 11 or the Court's inherent authority, must be filed within a "reasonable time" of the allegedly offending conduct. In this case, Tsui's decision to wait until the lawsuit was dismissed without prejudice under Fed. R.Civ.P. 41(a)(1)(i) to file a motion for sanctions violates the requirements of Rule 11, and is unreasonable under any objective measure.

### (1) Tsui failed to comply with the requirements of Rule 11.

12

Tsui purports to be seeking sanctions pursuant to "Rule 11 of the Federal Rules of Civil Procedural." Federal Rule of Civil procedure 11 provides in pertinent part:

(c) Sanctions

If, after notice and reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How initiated

(A) By motion

A motion for sanctions under this rule shall be made separately from **other motions or requests** and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, **but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.**

Fed. R. P. 11(c) (emphasis supplied).

Rule 11(c)(1)(A) creates a "safe harbor" under which a "party seeking sanctions must serve its motion on the opposing party and may file the motion with the court 21 days later *only* if the challenged pleading is neither withdrawn nor corrected within that time." In re M.A.S.

13

Realty Corp., 326 B.R. 31,38 (Bankr. D. Mass 2005) (emphasis supplied). "The safe harbor provision must be strictly complied with in order for sanctions to be imposed under [Rule 9011]." Id. "It is clear from the language of the rule that it imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions." Brickwood Contractors, Inc. v. Datanet Engineering, Inc., 369 F. 3d 385, 389 (4th Cir. 2004); see also, e.g., Radcliffe v. Rainbow Construction Co., 254 F. 3d 772, 788-89 (9th Cir. 2001) (safe harbor provides strict procedural requirements, and informal warnings are insufficient to satisfy the rule); In re Szabo Contracting, Inc., 283 B.R. 242, 258 (Bankr. N.D. Ill. 2002) ("The safe-harbor provision is a mandatory procedural prerequisite and sanctions imposed without compliance are improper.")

Under the safe harbor provision, "a party cannot wait to seek sanctions until after the contention has been judicially disposed." Ridder v. City of Springfield, 109 F. 3d 288, 295 (6th Cir. 1997). Rather, "[a] party must now serve a Rule 11 motion on the allegedly offending party at least twenty one days prior to . . . judicial rejection of the offending contention." Id. Any other interpretation of Rule 9011 (c)(1)(A) would render the provision meaningless. See id.; M.A.S. Realty Corp., 326 B.R. at 39.

In this case, it is beyond dispute that, according to the certificate of service on the motion, Tsui both served and filed the motion for sanctions on August 17, 2005. Compliance with Rule 11 would have required Tsui to serve the motion *prior* to judicial resolution of the allegedly offending conduct Tsui raises in her motion. Indeed, GEMIC's voluntary non-suit under Fed. R. Civ. P. 41(a)(1)(i) was an option expressly allowed by this Honorable Court's Order dated August 9, 2005.

14

Had Tsui complied with Rule 11 at the time of any alleged conduct, GEMIC would have corrected any claimed impropriety; GEMIC does not admit that there is any. By waiting until after the non-suit, which was expressly envisioned by this Court's Order of August 9, 2005. Tsui has effectively nullified the safe harbor. M.A.S. Realty Corp., 326 B.R. at 39. Tsui's failure to comply with Rule 11 renders the motion procedurally defective.

Moreover, Rule 11(c)(1)(A) mandates that a Rule 11 motion "...be made separately from other motions or requests...". It is undisputed that Tsui's Motion under Rule 11 is combined with a request under 28 U.S.C. sec. 1927, a practice expressly prohibited by Rule 11, warranting denial of Tsui's motion with prejudice.

Tsui's allegations target GEMIC's alleged discovery violations; Gannett's conduct is immunized because Fed. R. Civ. P. 11(d) expressly provides that "subdivisions (a) through (c) of this rule do not apply to disclosures or discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37." Portions of Tsui's motion are devoted to allegations concerning a deposition of Tsui. Under the express provisions of Fed R. Civ. P. 11(d), these alleged violations cannot be considered as sanctionable conduct.

### (2) Tsui failed to file the motion within a reasonable amount of time.

Even if the motion for sanctions were deemed not to have been brought pursuant to Rule 11, it is well settled that any motion for sanctions must be brought within a *reasonable* amount of time. See e.g., Fotucci v. United States Fidelity and Guaranty Co., 153 F.R.D. 484, 486-87 (D. Mass. 1994) (Motion for sanctions under Rule 11 and 28 U.S.C. §1927 not timely because not filed within a reasonable time); Kaplan v. Zenner, 956 F. 2d 149, 150-51 (7th Cir. 1992) (sanctions motion should be filed within reasonable time after discovery of basis for motion);

15

Muthig v. Brantpoint Nantucket, Inc., 838 F. 2d 600, 604 (1st Cir. 1988) ("a party should make a Rule 11 motion within a reasonable time") (cited as supported in Forucci, 153 F.R.D. at 486), abrogated on other grounds in Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405-07 (1990); United Capitol Insurance Co. v. Kamakani Services, Inc. (In re Kamakani Services, Inc), 125 B.R. 819, 824-25 (Bankr. D. Hawaii1991) (motion for sanctions under Court's inherent authority, Rule 9011, and 28 U.S.C. § 1927 was facially untimely where it was filed seventeen months after filing motion for summary judgement); cf. also Monahan Corp. v. Whitty, 319 F. Supp. 2d 227, 233-35 (D. Mass, 2004) (motion for sanctions untimely where it was filed sixteen months after becoming aware of basis, and where safe harbor not complied with); Fed. R. Civ. P. 11 Advisory Committee's Note (Rule 11 Motion Should be served "promptly upon discovering a basis for doing so").

In this case, GEMIC's theory has been well known to Tsui, Attorney Kenneth M. Levine and Attorney Michael B. Feinman. Under the decisions noted above a rule 11 would have to be filed at that time of the conduct complained of, not more than a year later, after dismissal and after the case is closed.

Under any objective measure, waiting fourteen months to file her motion for sanctions under these circumstances is manifestly unreasonable. See Kamakani, 125 B.R. at 824-25 (motion for sanctions untimely where movant had grounds to request sanctions seventeen months prior to filing motion); Forucci, 153 F.R.D. at 486 (waiting more than eight months while case was pending on appeal and an additional 29 days after mandate was issued unreasonable); Monahan Corp., 319 F. Supp. 2d at 234-35 (sixteen month delay in filing sanctions motion after

learning of basis for motion was too long).  Accordingly, the motion should be denied as

untimely.


### B. Tsui has failed to carry her burden to prove that sanctions are warranted.

It is Tsui's burden, as the moving party, to demonstrate both that sanctionable conduct

occurred, and that an award of sanctions is warranted under the facts of this case.  See Leach v.

Northern Telecom, Inc., 141 F.R.D. 420, 429 (E.D.N.C. 1991) cf. M.A.S. Realty Corp., 326 B.R.

at 32 (noting that court had earlier found movant met burden to show violations of Rule 9011

occurred and that sanctions were warranted).  "The imposition of sanctions under Rule 9011 is a

very serious matter," meriting "a great deal of thought and care."  Realty Corp., 326 B.R. at 37.

In assessing Tsui's requested sanctions, the Court should "take pains not to use an elephant gun

to slay a mouse."  Navarro-Ayala v. Nunez, 968 F. 2d 1421, 1427 (1st Cir. 1992) (quotation and

brackets omitted).  Even assuming the motion for sanctions is timely, it is manifestly apparent

that Tsui has failed to carry her burden in this case.


### C. A non-party such as Ching Yee M. Tsui typically cannot seek sanctions under Fed R. Civ. P. 11

"As a general rule, non-parties to a case may not bring a motion for sanctions pursuant to

rule 11. New York News, Inc. v. Kheel, 972 F. 2d 482, 488. (2d Cir. 1992)."  Nyer v. Winterthur

International 290 F. 3d 456, 459 (1st Cir. 2002). In the instant proceedings, Tsui was never  a

party and the decision to hold an evidentiary hearing was made by this Honorable Court before

GEMIC was able to conduct any direct discovery of Tsui. GEMIC never filed an amended

17

complaint naming Tsui and Tsui's attorney repeatedly stated at hearings that he did not know the claims lodged against his client. In Nyer sanctions were allowed when a proposed party was named in an amended complaint and had to defend the plaintiff's motion seeking the amendment. The Nyer Court analyzed the liability of the proposed defendant and found none. Here, the Massachusetts Superior Court has given provisional judicial approval to GEMIC's position and theory and the Santa Clara Superior Court appears poised to do so as well.

When GEMIC did amend the complaint it was drafted in response to the Court's hearing on April 21, 2005. Tsui was never named as a party in the amended complaint. Although she was never a party, Tsui opposed the motion, though she lacked standing. Ultimately this Court allowed the motion to amend the complaint.

## CONCLUSION

For the reasons stated, Tsui's motion under Fed. Civ. P. 11 and 28 U.S.C. sec. 1927 should be denied.

General Electric Mortgage Insurance Corporation,
Plaintiff/Judgment Creditor,
By its attorney,

Richard W. Gannett, Esquire
BBO #184430
Gannett & Associates
165 Friend Street, Suite 200
Boston, MA 02114-2025
(617) 367-0606

Dated: August 31, 2005

18

## **CERTIFICATE OF SERVICE**

I, Richard W. Gannett, hereby certify that on August 31, 2005, I served a copy of General Electric Mortgage Insurance Corporation's Opposition to Motion for Sanctions Under Fed. R. Civ. P. 11 and 28 U.S.C. sec. 1927 and request for oral argument upon the following individual, by U. S. Mail postage prepaid upon:

Michael B. Feinman, Esq.
Feinman Law Offices
23 Main Street
Andover, MA 01810

_____
Richard W. Gannett

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.
[seal]

SUPERIOR COURT
CIVIL ACTION
No. *03-451*

*General Electric Mortgage Insurance Corporation* ......................., Plaintiff

*Cheng-Yih Hu, v. Individually* and ..................., Defendant
*System Communications, Inc. Reach and Apply Defendant*

SPECIAL    WRIT OF ATTACHMENT
*( G.L. c. 223 sec. 67 )*

To the sheriffs of our several counties or their deputies:

We command you to attach the goods or estate of defendant *Cheng-Yih Hu standing in the name of Ching Yee M. Tsui*, of. *36 Russell's Way Westford, MA* ........................, to the value of $ *210,000.00* .................................. (the amount authorized), as prayed for by plaintiff *General Electric Mortgage Ins. Corporation*, of. *Raleigh, North Carolina* ................... whose attorney is *Richard W. Gannett Gannett Associates* of. *Eleven Beacon St. Boston, MA 02108-3011* ..............., in an action brought by said plaintiff *General Electric Mortgage Ins. Corporation* ............. against said defendant *Cheng-Yih Hu* ...................... in the Superior Court for ...... *Middlesex* ............................ County, and make due return of this writ with your doings thereon.

The complaint in this case was filed on *January 31, 2003* ..........This attachment was approved on ... *March 4, 2003* ............ 19..., by *Thomas P. Billings, Justice* J., in the amount of $ *210,000.00* ..........

Witness, ~~Robert A. Mulligan~~ Suzanne V. DelVecchio, Esquire at *Lowell Superior Court* the. *4th* day of *March*, 19. *2003*

*Edward J. Sullivan*
Clerk

NOTE.

1. This writ of attachment is issued pursuant to Rule 4.1 of the Massachusetts Rules of Civil Procedure.

FORM NO. SUP-005

6

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          MIDDLESEX COUNTY SUPERIOR COURT
                                        CIVIL ACTION NO.03-451 L-2

---

GENERAL ELECTRIC MORTGAGE          )
INSURANCE CORPORATION,             )
                                   )
            Plaintiff,             )
                                   )
v.                                 )
                                   )
CHENG-YIH HU,                      )
 Individually,                     )
                                   )
            Defendant,             )
                                   )
and                                )
                                   )
SYSTEM COMMUNICATIONS, INC.,       )
                                   )
            Reach and Apply        )
            Defendant.             )

---

**GENERAL ELECTRIC MORTGAGE INSURANCE CORPORATION'S MOTION FOR**
***EX PARTE* ATTACHMENT OF REAL PROPERTY STANDING IN NAME OF CHING**
**YEE M. TSUI OR, IN THE ALTERNATIVE, FOR A TEMPORARY RESTRAINING**
**ORDER BARRING THE SALE, TRANSFER OR ENCUMBERING OF THE**
**PROPERTY COMMONLY KNOWN AS 36 RUSSELL'S WAY WESTFORD, MA**

Plaintiff judgment creditor, General Electric Mortgage Insurance Corporation

("GEMIC"), moves the Court for an *ex parte* attachment of real property standing in the name of

Ching Yee M. Tsui ("Tsui"), in the sum of $202,783.17 with costs and interest or, in the

alternative, for a temporary restraining order barring the sale, transfer or encumbering of the

property commonly known as 36 Russell's Way Westford, MA unless $202,783.17 of the sale

proceeds is placed in escrow pending further hearing before this Honorable Court.

**FL-110**

## SUMMONS (Family Law)

*CITACION JUDICIAL (Derecho de Familia)*

**NOTICE TO RESPONDENT** *(Name):* CHENG-YIH HU
*AVISO AL DEMANDADO (Nombre):*

FILED FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

2005 JAN -3 PM 1: 52

KIRI TORRE
CHIEF EXEC OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
DEPUTY
BY

| You are being sued. *A usted lo están demandando.* |

**Petitioner's name is:** CHING YEE MILLOR TSUI

*El nombre del demandante es:*

CASE NUMBER *(Número del Caso):*

# 105FL 124146

You have **30 calendar days** after this *Summons* and *Petition* are served on you to file a *Response* (form FL-120 or FL-123) at the court and have a copy served on the petitioner. A letter or phone call will not protect you.

If you do not file your *Response* on time, the court may make orders affecting your marriage or domestic partnership, your property, and custody of your children. You may be ordered to pay support and attorney fees and costs. If you cannot pay the filing fee, ask the clerk for a fee waiver form.

If you want legal advice, contact a lawyer immediately. You can get information about finding lawyers at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, or by contacting your local county bar association.

*Usted tiene 30 días calendarios después de recibir oficialmente esta citación judicial y petición, para completar y presentar su formulario de Respuesta (Response form FL-120 o FL-123) ante la corte. Una carta o una llamada telefónica no le ofrecerá protección.*

*Si usted no presenta su Respuesta a tiempo, la corte puede expedir órdenes que afecten su matrimonio, su propiedad y que ordenen que usted pague mantención, honorarios de abogado y las costas. Si no puede pagar las costas por la presentación de la demanda, pida al actuario de la corte que le dé un formulario de exoneración de las mismas (Waiver of Court Fees and Costs).*

*Si desea obtener consejo legal, comuníquese de inmediato con un abogado. Por información de abogados, el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), el sitio web de California Legal Services (www.lawhelpcalifornia.org) oponié endose en contacto con el colejio de abogados locales.*

**NOTICE:** The restraining orders on page 2 are effective against both spouses or domestic partners until the petition is dismissed, a judgment is entered, or the court makes further orders. These orders are enforceable anywhere in California by any law enforcement officer who has received or seen a copy of them.

**AVISO:** *Las prohibiciones judiciales que aparecen al reverso de esta citación son efectivas para ambos cónyuges, tanto el esposo como la esposa, hasta que la petición sea rechazada, se dicte una decisión final o la corte expida instrucciones adicionales. Dichas prohibiciones pueden hacerse cumpliren cualquier parte de California por cualquier agente del orden público que las haya recibido o que haya visto una copia de ellas.*

1. The name and address of the court are (*El nombre y dirección de la corte es):*
   SNATA CLARA COUNT SUPERIOR COURT 170 PARK CENTER PLAZA, SAN JOSE, CA 95113

2. The name, address, and telephone number of the petitioner's attorney, or the petitioner without an attorney, are
   (*El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
   DALE CHEN, ESQ., 147 CASTRO STREET, STE. 2A, MOUNTAIN VIEW, CA 94041; 650 988-6696

Date *(Fecha):* JAN X 3 2005 Kiri Torre  Clerk Officer/Clerk , Deputy
Chief Executive Officer/Clerk
S. ANGULO

[SEAL]

NOTICE TO THE PERSON SERVED: You are served

a. ☐ as an individual.
b. ☐ on behalf of respondent who is a
   (1) ☐ minor
   (2) ☐ ward or conservatee
   (3) ☐ other *(specify):*

**(Read the reverse for important information.)**
*(Lea el reverso para obtener información de importancia.)*

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-110 [Rev. January 1, 2005]

**SUMMONS**
**(Family Law)**

Family Code §§ 232, 233, 2040, 7700;
Code of Civil Procedure, §§ 412.20, 415.60–416.90
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com.