UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11456-RWZ

|  |  |
|---|---|
| GENERAL ELECTRIC MORTGAGE | ) |
| INSURANCE CORPORATION, | ) |
|  | ) |
| Plaintiff, | ) |
| Judgment Creditor, | ) |
| v. | ) |
|  | ) |
| CHI CHEN | ) |
| A/K/A CHI CHEN HU, | ) |
| A/K/A TRACY CHEN | ) |
| CHENG YIH HU, | ) |
| a/k/a MICHAEL HU, | ) |
|  | ) |
| Defendants, | ) |
| Judgment Debtors. | ) |
|  | ) |
|  | ) |

## GENERAL ELECTRIC MORTGAGE INSURANCE CORPORATION'S SUPPLEMENTAL OPPOSITION TO RULE 11 MOTION AND CLAIM UNDER 28 U.S.C. SEC. 1927

### ORAL ARGUMENT REQUESTED

General Electric Mortgage Insurance Corporation ("GEMIC") respectfully submits the

following Supplemental Opposition and objection with incorporated Memorandum of Law to

non-party Ching Yee M. Tsui's Motion for Sanctions under Fed. R. Civ. P. 11 and any claim

under 28 U.S.C. sec. 1927. In further support of this Opposition, GEMIC states as follows:

## INTRODUCTION

This supplement is in response to an Order of this Court dated September 7, 2005.

### Undue Expense

#### GEMIC Is Not Responsible For Tsui's Additional Expense.

The record is replete with numerous instances whereby Tsui has been causing undue expense to GEMIC in these proceedings by failing to attend her own deposition when duly subpoenaed and by failing to produce relevant documents as envisioned by this Court's Order the April 21, 2005 as noted in the transcript passages submitted on August 31, 2005. By engag    g in Tsui's chosen tactics, she has increased her own expenses which she could have averted. It patently unfair to GEMIC for Tsui to seek costs from GEMIC when she was given the opportu    y by GEMIC for a dismissal, without prejudice, in a letter dated July 6, 2005 to her attorney and same offer for a dismissal was reiterated in a conference on July 19, 2005 and she elected to continue with litigation before this Court.

During a Local Rule 7.1(A)(2) conference on July 19, 2005, GEMIC's attorney Richard W. Gannett conducted a telephone conference with Attorney Michael Feinman concerning the August 15, 2005 evidentiary hearing. During this Local Rule 7.1(A)(2) conference, Gannett followed up on his July 6, 2005 letter and informed Feinman that he wished to cancel or adjour the August 15, 2005 evidentiary hearing. Feinman, on behalf of Tsui, refused this offer and insisted on conducting the evidentiary hearing. *See* Affidavit of Richard W. Gannett dated September 16, 2005.

Accordingly, GEMIC afforded Tsui the opportunity forty days prior to the scheduled evidentiary hearing to deliver her assent to cancel the hearing. This Court has imposed manda    y

2

conferences upon lawyers seeking to file motions before this Court. Put another way, GEMIC afforded Tsui almost six weeks notice that it intended to take measures to cancel or adjourn th. August 15, 2005 evidentiary hearing, not eleven days. It is extremely doubtful that any final s    ; in preparation for the evidentiary hearing occurred prior to July 6, 2005, when GEMIC sent its letter to Feinman.

Because Tsui was aware GEMIC would ultimately be resolving this matter in a judicial forum costs would inevitably be incurred and, consequently, cannot be assigned to GEMIC.

Accordingly, it was entirely reasonable for Tsui to anticipate that GEMIC would be seeking court approval to cancel or adjourn the hearing in a motion to be filed and it cannot be surprise to Tsui that such a motion was indeed filed on August 4, 2005. This is especially true when new facts were made known to GEMIC during this time period and it was in GEMIC's interest to conduct one trial concerning both properties. Moreover, it was Gannett's legal duty his client to take appropriate steps to preserve his client's claims concerning both properties. : : *Page v. Frazier* 388 Mass. 55 (1983) (bank attorney could not be held liable to bank's borrow. where no attorney-client relationship established).

The motion filed on August 4, 2005 initially took the form of a letter dated July 6, 200 and later a telephone conference under Local Rule 7.1(A)(2) with Tsui's attorney of record on July 19, 2005, and when that was met with resistence, a motion. As an adjunct, GEMIC chose draft its suit concerning both properties and include it as an exhibit to the motion to demonstra good faith that it was not merely canceling the trial but was pursuing its claims in a forum with ı expanded theory concerning the new evidence and the new property. Gannett had a duty to incl  e the new theory and the new property.

3

On or about July 19, 2005, Tsui had already testified falsely on May 24, 2005 concernii

the true nature of her alliance with Cheng Yih Hu and the purchase of another property in the

Silicon Valley, which GEMIC has a legitimate claim to or its proceeds, because Hu funded the

payment of the property and under California law, there is a presumption that it is community

property.

On July 15, 2005, GEMIC received the divorce papers which Tsui initiated during Jan      /

3, 2005, demonstrating the Silicon Valley property is a marital home and under California law.     u

has a legal interest therein.

> **The California Supreme Court and one of its intermediate Appellate Courts hold :**
> **that there is a presumption that property acquired by a married person is in fact**
> **community property such that GEMIC can demonstrate a legal interest in both th**
> **Westford and the Silicon Valley property.**

In *Gagan v. Gouyd*, 73 Cal. App. 4th 835, 86 Cal. Rptr. 2d 733 (1999), the California C      t

of Appeal, an intermediate appellate court, held that there is " . . . {a] presumption that proper

acquired by married persons during the marriage is community property . . . " *id* at 843. Becau

it is undisputed that both the Westford property and the Silicon Valley property were acquired

during the marriage, Cheng Yih Hu has an interest in both properties. While *Gagan* reversed t

trial court's allowance of a fraudulent conveyance count, a 2003 California Supreme Court

decision appears to permit such a remedy. *Mejia v. Reed*, 31 Cal. 4th 657, 74 P. 3d 166, 3 Cal.

Rptr. 3d 390 (2003). *Mejia* also underscores the rule of law that " . . . [w]hen the court divide:      e

marital property in the absence of an agreement by the parties, it must divide the property equa

(Fam. Code, sec. 2250), which provides some protection for a creditor of one spouse only." *id*

668.

4

GEMIC acted promptly. Approximately two weeks elapsed between the July 19, 2005

conference and the filing of the Complaint in the Superior Court, an exhibit to the August 4, 2

Motion. Because Tsui did not provide GEMIC the discovery sought in its subpoena and did n

answer questions at deposition as contemplated by the parameters of an allowed Amended

Complaint, GEMIC may have been precluded under collateral estoppel or issue preclusion fro

pursuing its claims against the Silicon Valley property had GEMIC conducted the evidentiary

hearing on August 15, 2005. This is true even though it would never have been the subject ma

of the evidentiary hearing.

## Rule 11 Should Not Be Used to Attack a Creditor in Satisfying Its Legitimate Claims

Because GEMIC has only recently learned of the location of Michael Hu's employmen

GEMIC should be given the opportunity to conduct discovery concerning his claim to 50% of

marital estate as disclosed in his divorce pleadings previously submitted. GEMIC should not b

forced into a trial until that discovery is completed and concluded. While GEMIC recognizes tl

Tsui has the burden of proof under California law as noted in the California decisions recited

above, GEMIC wishes to adequately prepare. In the disclosed Superior Court action, GEMIC       s

served Tsui with a document request and a set of interrogatories.

Vis-a-vis Tsui, GEMIC and Hu are temporarily aligned: Hu claims 50% of the marital

estate which Tsui claims to own 100% of and GEMIC claims a portion of Hu's assets. Given       s

temporary alignment it is in the interest of GEMIC to supplement its argument with the data

gleaned directly from Hu. Tsui's strategy was to secrete her changing relationship with Hu for

pecuniary benefit and advantage. Tsui hid the nature of her relationship with Hu during the M

5

24, 2005 deposition in order to gain a tactical advantage at the August 15 evidentiary hearing. Tsui cannot now complain that her costs have increased after engaging in this litigation strateg By failing to be frank at the deposition, Tsui forced GEMIC to deploy its resources on investigations in California to more fully ascertain the nature of the relationship between Hu al Tsui. Tsui cannot complain of undue expense when she could have averted the entire matter a Tsui cannot assign GEMIC this responsibility.

When considering sanctions, "[t]he mere dismissal of a complaint does not establish th    t is without foundation in the law. (citing *Hazel Crest Federation of Teachers, IFT, AFT AFL-C v. Board of Education of School Dist.* 152 ½ 206 Ill. App. 3d 69, 563 NE 2d 1088 1ˢᵗ Dist. 199 ... when applying [the sanctions rule] the court is not rendering judgment on the merits of the c    :, but is ruling on a collateral issue: the conduct of the attorney and the client." Citing *Cooter & Gell v. Hartmarx Corp.* 496 US 384 (1990).   Volume 92 *Illinois Bar Journal* p. 408 (2004).

## **CONCLUSION**

Because GEMIC informed Tsui through her attorney Feinman of its willingness to non:   t

the action as early as July 6, 2005, Tsui's unwillingness to agree to the inevitable result, *i.e.*

noticing a dismissal under Fed. R. Civ. P. 41(a)(1)(i) renders Tsui's claims unavailing.

General Electric Mortgage Insurance Corporation,
Plaintiff/Judgment Creditor,
By its attorney,

Richard W. Gannett, Esquire
BBO #184430
Gannett & Associates
165 Friend Street, Suite 200
Boston, MA 02114-2025
(617) 367-0606

Dated: September 16, 2005

## **CERTIFICATE OF SERVICE**

I, Richard W. Gannett, hereby certify that on September 16, 2005, I served a copy of
General Electric Mortgage Insurance Corporation's Supplemental Opposition to Motion for
Sanctions Under Fed. R. Civ. P. 11 and 28 U.S.C. sec. 1927 and request for oral argument and
affidavit of Richard W. Gannett with exhibits upon the following individual, by U. S. Mail
postage prepaid:

Michael B. Feinman, Esq.
Feinman Law Offices
23 Main Street
Andover, MA 01810

Richard W. Gannett

7

Westlaw.

3 Cal.Rptr.3d 390                                                                                        Page 1
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily
Journal D.A.R. 9119
**(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)**

☞

**Briefs and Other Related Documents**

Supreme Court of California
Rhina MEJIA, Plaintiff and Appellant,
v.
Danilo REED et al., Defendants and Respondents.
**No. S106586.**

Aug. 14, 2003.

**Background:** Mother of child born out of
wedlock filed action to obtain lien against real
property awarded to father's wife under marital
settlement agreement (MSA) in divorce
proceedings. The Superior Court, Santa Clara
County, No. CV 769375, Frank Cliff and Robert
A. Baines, JJ., granted father's motion for
summary judgment, and mother appealed. The
Court of Appeal reversed.

**Holdings:** The Supreme Court granted review,
superseding the opinion of the Court of Appeal,
and, in an opinion by Kennard, J., held that:
(1) as a matter of first impression, the Uniform
Fraudulent Transfer Act (UFTA) applies to
property transfers under MSAs, disapproving
***Gagan v. Gouyd,* 73 Cal.App.4th 835, 86
Cal.Rptr.2d 733;**
(2) mother failed to establish father's insolvency
at time of transfer or thereafter, as required to
establish constructive fraud under UFTA; and
(3) as matter of first impression, future child
support payments should
not be viewed as a "debt" under UFTA.
Affirmed in part, reversed in part, and remanded.

Opinion, 118 Cal.Rptr.2d 415, reversed.

West Headnotes

**[1] Fraudulent Conveyances ⬅️226**
186k226 Most Cited Cases
Uniform Fraudulent Transfer Act (UFTA) permits
defrauded creditors to reach property in the hands

of a transferee. West's Ann.Cal.Civ.Code
3439-3439.12.

**[2] Divorce ⬅️321.5**
134k321.5 Most Cited Cases
Family Code protects property transferred t
spouse incident to divorce from the debts of
other spouse. West's Ann.Cal.Fam.Code § 916.

**[3] Statutes ⬅️188**
361k188 Most Cited Cases
When the plain meaning of statutory text
insufficient to resolve the question of
interpretation, the courts may turn to rules
maxims of construction which serve as aids in
sense that they express familiar insights at
conventional language usage.

**[4] Statutes ⬅️217.4**
361k217.4 Most Cited Cases
When the plain meaning of statutory text
insufficient to resolve the question of
interpretation, courts may look to the legisla
history of the enactment.

**[5] Statutes ⬅️184**
361k184 Most Cited Cases
Court may consider the impact of a statu
interpretation on public policy.

**[6] Fraudulent Conveyances ⬅️8**
186k8 Most Cited Cases
Under the Uniform Fraudulent Transfer
(UFTA), a transfer is "fraudulent," both as
present and future creditors, if it is made v
actual intent to hinder, delay, or defraud
creditor of the debtor. West's Ann.Cal.Co
3439.04(a).

**[7] Fraudulent Conveyances ⬅️61**
186k61 Most Cited Cases

**[7] Fraudulent Conveyances ⬅️77**
186k77 Most Cited Cases
Even without actual fraudulent intent, a tran
may be fraudulent as to present creditors if

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

3 Cal.Rptr.3d 390                                                                    Page 2
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily
Journal D.A.R. 9119
(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)

debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. West's Ann.Cal.Civ.Code § 3439.05.

**[8] Fraudulent Conveyances ☞24(1)**
186k24(1) Most Cited Cases
On its face, the Uniform Fraudulent Transfer Act (UFTA) applies to all transfers.

**[9] Fraudulent Conveyances ☞5**
186k5 Most Cited Cases
To "supplement" the Uniform Fraudulent Transfer Act (UFTA) means to provide something additional to the law, not to narrow or nullify the law. West's Ann.Cal.Civ.Code §§ 3439-3439.12.

**[10] Fraudulent Conveyances ☞5**
186k5 Most Cited Cases
Provision of Family Code protecting property transferred to a spouse incident to divorce from debts of the other spouse did not "supplement" Uniform Fraudulent Transfer Act (UFTA), within scope of rules of statutory interpretation, where application of Family Code provision at issue to UFTA would have established exception to UFTA, thereby narrowing it or nullifying portion thereof. West's Ann.Cal.Civ.Code §§ 3439-3439.12; West's Ann.Cal.Fam.Code § 916.

**[11] Husband and Wife ☞278(1)**
205k278(1) Most Cited Cases
Whenever the parties to an action for divorce agree upon the property division, no law requires them to divide the property equally, and the court does not scrutinize the marital settlement agreement (MSA) to ensure that it sets out an equal division. West's Ann.Cal.Fam.Code § 2550.

**[12] Divorce ☞321.5**
134k321.5 Most Cited Cases
Only statutory exception to the Family Code's protection of property transferred to a spouse incident to divorce from debts of the other spouse is a provision that preserves the liability of

property subject to a preexisting lien. We Ann.Cal.Fam.Code § 916(a)(2).

**[13] Fraudulent Conveyances ☞24(1)**
186k24(1) Most Cited Cases
Neither language of Uniform Fraudulent Tran Act (UFTA) and Family Code provis protecting property transferred to a spo incident to divorce from debts of the other spo nor their respective legislative histories, dispositive of question of whether Family C provision created exception to UFTA's r against fraudulent conveyances for mar settlement agreements (MSAs), requir interpreting court to resort to po considerations.

**[14] Fraudulent Conveyances ☞24(1)**
186k24(1) Most Cited Cases
Considerations of public policy favc interpretation of conflicting provisions of Unifc Fraudulent Transfer Act (UFTA) and Far Code provision protecting property transferred a spouse incident to divorce from debts of other spouse to permit creditors to reach prop fraudulently conveyed by means of mar settlement agreements (MSAs); general legisla policy protected creditors from fraudu transfers, including transfers between spou mere fact that such interpretation had potentia complicate negotiation of MSAs was not enti to substantial weight, and state and federal l already permitted setting aside of dissolu judgments for fraud. West's Ann.Cal.Fam.Cc 2122(a).

**[15] Fraudulent Conveyances ☞24(1)**
186k24(1) Most Cited Cases

**[15] Fraudulent Conveyances ☞103.1**
186k103.1 Most Cited Cases
State legislature has a general policy of protec creditors from fraudulent transfers, incluc transfers between spouses; a transfer be dissolution can be set aside as a fraudul

Westlaw.

3 Cal.Rptr.3d 390                                                                    Page 3
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily
Journal D.A.R. 9119
**(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)**

conveyance, and a transfer after dissolution can be set aside under the clear terms of the Uniform Fraudulent Transfer Act (UFTA). West's Ann.Cal.Civ.Code §§ 3439-3439.12; West's Ann.Cal.Fam.Code § 851.
*See 8 Witkin, Cal. Procedure (4th ed. 1997) Enforcement of Judgment, § 445.*

**[16] Divorce ☜252.2**
134k252.2 Most Cited Cases
When a court divides marital property in the absence of an agreement by the parties, it must divide the property equally, thus providing some protection from fraudulent conveyances for a creditor of one spouse only. West's Ann.Cal.Fam.Code § 2550.

**[17] Husband and Wife ☜277.1**
205k277.1 Most Cited Cases
Parties' debts, and how to pay them, are matters that should be considered in marital settlement negotiations.

**[18] Fraudulent Conveyances ☜24(1)**
186k24(1) Most Cited Cases
Uniform Fraudulent Transfer Act (UFTA) applies to property transfers under marital settlement agreements (MSAs); disapproving *Gagan v. Gouyd*, 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733. West's Ann.Cal.Civ.Code §§ 3439-3439.12.

**[19] Fraudulent Conveyances ☜61**
186k61 Most Cited Cases
Mother of child born out of wedlock, seeking to obtain lien against real property awarded to father's wife under marital settlement agreement (MSA) in divorce proceedings, failed to establish father's insolvency at time of transfer or thereafter, as required to establish constructive fraud under Uniform Fraudulent Transfer Act (UFTA), where father's future child support payments were not considered debt under UFTA. West's Ann.Cal.Civ.Code § 3439.05.
*See 8 Witkin, Cal. Procedure (4th ed. 1997) Enforcement of Judgment, § 463.*

**[20] Child Support ☜89**
76Ek89 Most Cited Cases

**[20] Child Support ☜90**
76Ek90 Most Cited Cases

**[20] Child Support ☜146**
76Ek146 Most Cited Cases

**[20] Child Support ☜148**
76Ek148 Most Cited Cases
Child support obligation is based primarily actual earnings and earning capacity, and asset: the time of dissolution play little part in computation thereof, although they may e indirectly into the calculation in two ways: (1 assessing earning capacity, a trial court may t: into account the earnings from invested ass and (2) a court may deem assets a spe circumstance that may justify a departure from guideline figure for support payments. West's Ann.Cal.Fam.Cod $4057(b)(5)$.

**[21] Fraudulent Conveyances ☜43(3)**
186k43(3) Most Cited Cases
Income not yet earned is not an asset under Uniform Fraudulent Transfer Act (UFTA) un it is subject to levy by a creditor, as would be case if, for example, the transferor possesse: promissory note payable at a future date. We Ann.Cal.Civ.Code § 3439.01(a)(2).

**[22] Child Support ☜224**
76Ek224 Most Cited Cases
**[22] Fraudulent Conveyances ☜61**
186k61 Most Cited Cases
Future child support payments should not viewed as a "debt" such as could render obli insolvent under the Uniform Fraudulent Tran: Act (UFTA). West's Ann.Cal.Civ.Code 3439-3439.12.
***392 *660 **168 Anderson & Blake, Har Law Firm and John H. Blake, Redwood City, Plaintiff and Appellant.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

3 Cal.Rptr.3d 390                                                                                              Page 4
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily
Journal D.A.R. 9119
(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)

Douglas B. Schwab, Los Angeles, for Jeffrey W. Little as Amicus Curiae on behalf of Plaintiff and Appellant.

Olimpia, Whelan & Lively, Olimpia, Whelan, Lively & Ryan, Gary L. Olimpia, Adam R. Bernstein; Robinson & Wood and Helen E. Williams, San Jose, for Defendant and Respondent Danilo Reed.

*661 Law Offices of Vanessa A. Zecher and Vanessa A. Zecher, San Jose, for Defendant and Respondent Violeta Reed.

***393 KENNARD, J.

Danilo Reed (Husband) had an extramarital relationship with plaintiff Rhina Mejia that led to the birth of a child. In a later divorce proceeding, Husband and Violeta Reed (Wife) entered into a marital settlement agreement (MSA) under which Husband transferred all his interest in jointly held real property to Wife. Plaintiff claimed that the purpose of this transfer was to prevent her from collecting child support, and she asked the court to impose a lien on the real property. The trial court rejected her contentions and entered summary judgment for Husband.

The Court of Appeal reversed the trial court, holding that a transfer of real property under an M.S.A. § could be found invalid under the Uniform Fraudulent Transfer Act (UFTA) (Civ.Code, §§ 3439-3439.12). Because that holding conflicted with another Court of Appeal decision, *Gagan v. Gouyd* (1999) 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, we granted review. We conclude that the Court of Appeal in this case correctly held that the provisions of the UFTA apply to marital settlement agreements.

That conclusion requires us to address an additional issue. Under the UFTA, a transfer can be invalid either because of actual fraud (Civ.Code, § 3439.04, subd. (a)) or constructive

fraud (*id.*, §§ 3439.04, subd. (b), 3439.05); form of constructive fraud is a transfer b; debtor, without receiving equivalent value return, if the debtor is insolvent at the time transfer or rendered insolvent by the transfer 3439.05). The Court of Appeal held that th were triable issues of fact relating to both ac fraud and constructive fraud. Husband sou review only of the holding relating to construc **169 fraud. [FN1] That holding rested on proposition that a person is insolvent ur section 3439.05 if the person's assets are less t the discounted cumulative value of future c support obligations. We disagree, and hold the discounted value of future child supp because it is generally paid from future inco rather than current assets, should not considered in determining solvency under sec 3439.05. We therefore reverse the judgment of Court of Appeal and remand the case for fur proceedings.

> FN1. Wife joined in Husband's petition review and brief on the merits. She did raise any separate arguments.

*662 I. FACTS AND PROCEDURAL HISTOI
The facts are taken from the Court of App opinion. Husband and Wife were married in 19 In 1994, Husband had an extramarital relations with plaintiff. Their daughter was born February 1995. In May 1995, Wife petitioned dissolution of her marriage to Husband. Tl entered into an M.S.A. § under which Husb conveyed all his interest in the couple's real es to Wife, and she conveyed her interest Husband's medical practice to him. The M.S.A provided that Husband would be so responsible for his extramarital child supp obligation. The M.S.A. § was merged int judgment of dissolution entered in August 1995

By June 1997, Husband had abandoned medical practice. He now lives with his mot He has no assets and little income.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

3 Cal.Rptr.3d 390                                                                      Page 5
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily
Journal D.A.R. 9119
**(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)**

Plaintiff, who had a pending paternity suit against Husband, filed a lis pendens against the real property awarded Wife under the MSA. The trial court in the paternity action awarded plaintiff child support of $750 per month, but it ruled ***394 that plaintiff had no standing to challenge the transfer of property under the MSA. The court later increased child support to $953 per month plus $200 per month for day care, or a monthly total of $1153.

Plaintiff then filed this action, asserting that the M.S.A. § was a fraudulent transfer by Husband to Wife, intended to hinder plaintiff in her collection of future child support. The complaint sought to establish a lien upon the real property transferred under the MSA. (See Civ.Code, § 3439.07 [remedies of defrauded creditor].) Husband moved for summary judgment. His supporting papers did not expressly deny fraudulent intent, instead relying on plaintiff's failure to provide direct evidence of intent to defraud. Husband further declared that the value of his practice at the date of separation was $600,000, and consequently that the community property had been divided equally.

In response, plaintiff asserted that the transfer was accompanied by certain "badges of fraud" from which the trier of fact could infer intent to defraud. She presented an expert evaluation appraising the fair market value of Husband's medical practice at $100,000. Another expert calculated the discounted value of future child support at $164,829 to $205,975 on the assumption that child support, based on Husband's earning potential, would be set at $1146 to $1482 monthly (plus $200 per month for child care expenses). Under the lowest of these figures, the discounted value of future child support would still exceed the appraised value of Husband's practice.

The trial court assumed that the UFTA applied to the MSA, but it granted Husband's summary

judgment motion on the grounds that no evide: was *663 presented of actual intent to defra and the transfer did not render Husband insolv. The Court of Appeal reversed, holding although the UFTA applies to marital settlen: agreements, triable issues of fact preclu: summary judgment.

## II. THE UNIFORM FRAUDULENT TRANSF ACT APPLIES TO TRANSFERS UNDER MARITAL SETTLEMENT AGREEMENTS

[1][2] The UFTA permits defrauded creditor: reach property in the hands of a transferee. Family Code, in section 916, protects prop transferred to a spouse incident to divorce fi the debts of the other spouse. Neither sta: expressly refers **170 to the other. Our task i: harmonize the two statutes. (*DeVita v. Count Napa* (1995) 9 Cal.4th 763, 778-779, Cal.Rptr.2d 699, 889 P.2d 1019.)

"Under well-established rules of statu construction, we must ascertain the intent of drafters so as to effectuate the purpose of the l [Citation.] Because the statutory language generally the most reliable indicator of legisla: intent, we first examine the words themsel. giving them their usual and ordinary meaning construing them in context." (*Esberg v. Union Co.* (2002) 28 Cal.4th 262, 268, 121 Cal.Rpt: 203, 47 P.3d 1069.) "[E]very statute should construed with reference to the whole system law of which it is a part, so that all may harmonized and have effect." (*Moore v. Pa*: (1982) 32 Cal.3d 535, 541, 186 Cal.Rptr. 475, P.2d 32.) "Where as here two codes are to construed, they 'must be regarded as blending each other and forming a single statu [Citation.] Accordingly, they 'must be r together and so construed as to give effect, wl possible, to all the provisions thereof.' [Citatio (*Tripp v. Swoap* (1976) 17 Cal.3d 671, 679, Cal.Rptr. 789, 552 P.2d 749.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

3 Cal.Rptr.3d 390                                                      Page 6
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily
Journal D.A.R. 9119
**(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)**

[3][4][5] When the plain meaning of the statutory text is insufficient to resolve the ***395 question of its interpretation, the courts may turn to rules or maxims of construction "which serve as aids in the sense that they express familiar insights about conventional language usage." (2A Singer, Statutes and Statutory Construction (6th ed.2000) p. 107.) Courts also look to the legislative history of the enactment. "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (_Dyna-Med, Inc. v. Fair Employment & Housing Com._ (1987) 43 Cal.3d 1379, 1387, 241 Cal.Rptr. 67, 743 P.2d 1323.) Finally, the court may consider the impact of an interpretation on public policy, for "[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." (_Ibid._)

Following these principles of statutory construction, we turn first to the text of the UFTA and the Family Code.

**\*664 A. The Statutory Texts**

1. The Uniform Fraudulent Transfer Act

[6][7] The UFTA was enacted in 1986; it is the most recent in a line of statutes dating to the reign of Queen Elizabeth I. "This Act, like its predecessor and the Statute of 13 Elizabeth, declares rights and provides remedies for unsecured creditors against transfers that impede them in the collection of their claims." (Legis. Com. com., 12A West's Ann. Civ.Code (1997 ed.) foll. § 3439.01, p. 272.) Under the UFTA, a transfer is fraudulent, both as to present and future creditors, if it is made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." (Civ.Code, § 3439.04, subd. (a).) Even without actual fraudulent intent, a transfer may be fraudulent as to present creditors if the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and "the debtor was

insolvent at that time or the debtor beca insolvent as a result of the transfer or obligatio (Civ.Code, § 3439.05.)

[8] On its face, the UFTA applies to all transf Civil Code, section § 3439.01, subdivision defines "[t]ransfer" as "every mode, direct indirect, absolute or conditional, voluntary involuntary, of disposing of or parting with asset or an interest in an asset...." The UF excepts only certain transfers resulting from l terminations or lien enforcement. (Civ.Code 3439.08, subd. (e).) Thus, the UFTA on its f encompasses transfers made under an M Consequently, most decisions of other st construing parallel provisions of the UFTA h that it does apply to marital property transf including those in connection with divorce. (S e.g., _Scholes v. Lehmann_ (7th Cir.1995) 56 F 750, 758-759 [applying Ill. law]; _Kardynalsk Fisher_ (1985) 135 Ill.App.3d 643, 90 Ill.Dec. 482 N.E.2d 117, 121-122; _Dowell v. De_ (Okla.Ct.App.2000) 998 P.2d 206, 209, 212-; _Greeninger v. Cromwell_ (1996) 140 Or.App. 915 P.2d 479, 482; see also _Federal Deposit Co. v. Malin_ (2d Cir.1986) 802 F.2d 12, 18 [un New York law, UFTA **171 applies but ex-w was good faith purchaser for value]; but see _L v. Damson_ (9th Cir.1964) 334 F.2d 896, [Wash. law]; _Witbart v. Witbart_ (1983) 204 M 446, 666 P.2d 1217, 1219.) Civil Code sec 3439.11 provides expressly that the UFTA "s be applied and construed to effectuate its gen purpose to make uniform the law ... among st enacting it."

[9][10] Husband here points to section 10 of UFTA (Civ.Code, § 3439.10), which provi "Unless displaced by the provisions of t chapter, the principles of law and equ including the law merchant ***396 and the relating to principal and agent, estoppel, lac fraud, misrepresentation, duress, coerc mistake, insolvency, or other validating

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

3 Cal.Rptr.3d 390                                                                Page 7
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily
Journal D.A.R. 9119
(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)

invalidating cause, **\*665** supplement its provisions." He argues that Family Code section 916 is a law that "supplement[s]" the provisions of the UFTA by, in effect, establishing an exception to its provisions. But to "supplement" the UFTA means to provide something additional to the law, not to narrow or nullify the law. This point is illustrated in *Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 51 Cal.Rptr.2d 528. The defendants there argued that compliance with the Bulk Sales Act (Cal. U. Com.Code, § 6101 et seq.) immunized a transfer from attack under the UFTA. The Court of Appeal disagreed, concluding that the protections given creditors under the Bulk Sales Law supplemented, that is, added to the protections of the UFTA. (*Monastra v. Konica Business Machines, U.S.A., Inc., supra,* at pp. 1639-1640, 51 Cal.Rptr.2d 528.)

2. The Family Code

Before 1984, a spouse who received community property after a dissolution of marriage was liable for the community debts incurred by the other spouse during the marriage. (*Dawes v. Rich* (1997) 60 Cal.App.4th 24, 28, 70 Cal.Rptr.2d 72; see *Packard v. Arellanes* (1861) 17 Cal. 525; *Frankel v. Boyd* (1895) 106 Cal. 608, 612-615, 39 P. 939.) Thus, a creditor of one spouse could often reach any property transferred to the other without resorting to an action to set aside a fraudulent transfer. Nevertheless, that remedy was available when needed to invalidate a fraudulent transfer made under an MSA. (See, e.g., *McKnight v. Superior Court* (1985) 170 Cal.App.3d 291, 295-296, 299, 215 Cal.Rptr. 909.)

In 1984, however, the Legislature substantially changed the postmarital liability of spouses. "The Legislature determined that, under most circumstances, after a marriage has ended, it is unwise to continue the liability of spouses for community debts incurred by former spouses." (*Dawes v. Rich, supra,* 60 Cal.App.4th at p. 30, 70 Cal.Rptr.2d 72.) It enacted former Civil C section 5120.160, which provided in pertinent p that, upon the dissolution of the marriage, ' property received by [a married] person in division is not liable for a debt incurred by person's spouse before or during marriage, and person is not personally liable for the debt, un the debt was assigned for payment by the per in the division of the property." (Stats.1984, 1671, § 9, p. 6021.) When the Family Code enacted in 1992, Civil Code section 5120.1 became Family Code section 916.

[11] When the Legislature enacted former C Code section 5120.160, it contemplated that " ' allocating the debts to the parties, the court in dissolution proceeding should take into acco the rights of creditors so there will be availa sufficient property to satisfy the debt by person to whom the debt is assigned, provided net division is equal.' " **\*666**(*Lezine v. Secu Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 75, 58 Cal.Rptr.2d 76, 925 P.2d 1002, quo Recommendation Relating to Liability of Mar Property for Debts (Jan.1983) 17 Cal. I Revision Com. Rep. (1984) pp. 23-24, omitted.) Family Code section 2550, howe provides: "*Except upon the written agreemen the parties,* or on oral stipulation of the parties open court, or as otherwise provided in l division, in a proceeding for dissolution marriage or for legal separation of the parties, court shall ... divide the community estate of parties equally." **\*\*\*397** (Italics add. Whenever, as in this case, the parties agree u the property division, no law requires them divide the property equally, and the court does **\*\*172** scrutinize the M.S.A. § to ensure that it out an equal division. (*In re Marriage of Cra* (1993) 13 Cal.App.4th 81, 91, 16 Cal.Rpt 575.)

[12] The only statutory exception to Family C section 916's grant of immunity from liability i

Westlaw.

provision that preserves the liability of property subject to a preexisting lien (Fam.Code, § 916, subd. (a)(2)); the statute does not mention fraudulent transfers. Thus, on its face, Family Code section 916 would appear to protect transfers of marital property incident to divorce from being set aside under the UFTA. We note, however, that section 916 states that it applies "[n]otwithstanding any other provision of this chapter." (Similar language appeared in former Civil Code section 5120.160.) This language indicates that section 916 may be subordinate to other statutes, such as the UFTA, not included in the same chapter of the Family Code as section 916.

**B. Canons of Statutory Construction**

The parties call our attention to familiar canons of statutory interpretation, but these offer no assistance in resolving the apparent conflict between the statutes at issue here. Husband argues that the principle that specific provisions take precedence over general provisions (see Code Civ. Proc., § 1859; *Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310, 99 Cal.Rptr.2d 792, 6 P.3d 713) is controlling. He asserts that Family Code section 916, because it discusses only transfers in an MSA, is more specific than the UFTA, which regulates all transactions, and should therefore prevail over the UFTA. But one could as easily describe the UFTA as pertaining to only fraudulent transactions, and thus at least as specific as section 916, which concerns all marital settlement transactions. Neither statute appears to be significantly more specific than the other.

Plaintiff bases her argument on the adage of *expressio unis est exclusio alterius*--the expression of some things implies the exclusion of things not expressed. She argues that the Legislature, when it enacted the UFTA, knew how to make a specific exemption for transfers under an MSA--since it made exceptions for some other

transfers--and she asks us to infer from the *absence of an exception for marital settlem that the Legislature must have intended the UF to apply to marital settlement transactions. one can equally argue that the Legislature, who enacted former Civil Code section 5120.160 later recodified that provision as Family C section 916, knew how to make an exception fraudulent transfers, but chose not to do so. F the UFTA and the Family Code govern disc subject areas, and the Legislature's failure legislate expressly with respect to the instance in which they overlap does not sug any legislative intent as to which should prevai

**C. Legislative History**

Husband argues that the history of former C Code section 5120.160 (the predecessor to Fam Code section 916) shows that the Legislature not intend to allow creditors to challenge an M In 1984, when the Legislature was conside former section 5120.160, Carol Bruch, a professor at the University of California at Da proposed that the new law provide for notice creditors and grant them a right to intervene in dissolution proceedings. In connection with proposal, she suggested amending the measur provide that the section would not ***398 recovery by a creditor who was not notified did not approve the proposed marital settlem and "successfully challenges the property divi as a fraudulent conveyance in a motion to aside the property division filed within 3 ye after entry of the judgment dividing the prop er (Carol Bruch, U.C. Davis Law School, Sugge Amendments to Assem. Bill 1460 (1983-1 Reg. Sess.) Mar. 14, 1984.) The Law Revis Commission rejected Professor Bruch's sugge amendments, saying: "Carol proposes adoption a 'bankruptcy' or 'probate' type scheme imposing liability after dissolution of marri involving notice and an opportunity to appear creditors, and fraudulent conveyance standa