Westlaw.

3 Cal.Rptr.3d 390                  Page 9
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily Journal D.A.R. 9119
**(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)**

While this scheme is theoretically interesting, the Commission rejected it because of the extensive procedures involved. **173 It would transform simple divorce cases into elaborate proceedings involving many parties. We are unwilling to burden our bill with this; Carol can prepare and sponsor her own bill next session to adopt this sort of scheme if she is able to perfect it." (Nathaniel Sterling, Cal. Law Revision Com., letter to Assemblyman Alistair McAllister, Mar. 30, 1984, p. 2.) This historical account could support an inference that the Legislature did not intend to permit creditors to attack an MSA, as Husband contends, but it could also be viewed more narrowly as suggesting only a determination that creditors should not have standing to raise their claims in the dissolution proceeding itself.

The legislative history of the UFTA equally offers a weak inference in support of plaintiff's position. In 1986, when the Legislature considered the *668 UFTA, the Business Law Section of the California State Bar reported to the Legislature: "Serious consideration needs to be given to the effect of this statute in areas such as leveraged buyouts of businesses, *marital property agreements,* foreclosures sales of real property, to name a few examples." (Margaret Sheneman, State Bar of Cal. (Business Law Section), mem. to Judith Harper, Legis. Rep. on Sen. Bill No. 2150 (1985-1986 Reg. Sess.) Apr. 30, 1986, p. 2, italics added.) The Legislature, however, added no provisions relating to marital property transfers.

In sum, both when it enacted former Civil Code section 5120.160 and when it enacted the UFTA, the Legislature was advised that difficulties could arise from the intersection of family law and laws prohibiting fraudulent transfers. In both cases, it chose not to address the subject with specific legislation. In these circumstances, we cannot draw any conclusions as to what the Legislature intended based on the absence of legislative action.

**D. Policy Considerations**

[13] The Court of Appeal here concluded neither the language of the statutes nor t legislative history was dispositive, and tha would have to turn to an analysis of the relev policy considerations as they bear on the ques of legislative intent. The court that decided *Ga v. Gouyd, supra,* 73 Cal.App.4th 835, Cal.Rptr.2d 733, also found that neither statutory text nor legislative history was suffic to resolve the conflict, requiring it to base decision on policy considerations. We arrive the same juncture.

[14][15][16] The California Legislature ha general policy of protecting creditors f fraudulent transfers, including transfers betw spouses. A transfer before dissolution can be aside as a fraudulent conveyance. (See Fam.C § 851 [transmutation of marital property subjec UFTA]; *Reddy v. Gonzalez* (1992) 8 Cal.App 118, 122-123, 10 Cal.Rptr.2d 55.) A transfer a dissolution can be ***399 set aside under clear terms of the UFTA. When the court div the marital property in the absence of agreement by the parties, it must divide property equally (Fam.Code, § 2550), wl provides some protection for a creditor cf spouse only. In view of this overall policy protecting creditors, it is unlikely that Legislature intended to grant married couple one-time-only opportunity to defraud creditor including the fraudulent transfer in an MSA

[17] Husband puts forward two counterval policy considerations. First, he argues allowing M.S.A. § transfers to be conside fraudulent to creditors will complicate ma settlement negotiations. This contention supported by *Gagan v. Gouyd, supra,* Cal.App.4th at pages 842-843, 86 Cal.Rpti 733, which states: *669 "[A]s a matter of pol we believe that to engraft the fraudu transfer remedies onto a valid and appro

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

3 Cal.Rptr.3d 390                                                                                                    Page 10
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily
Journal D.A.R. 9119
(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)

marital settlement agreement would result in needlessly complicating the already emotionally laden dissolution process. It might result in the unraveling of a dissolution agreement painstakingly negotiated between the parties and their attorneys." We acknowledge Husband's contention, but we do not give it substantial weight. In our view, the parties' debts, and how to pay them, are matters that *should* be considered in marital settlement negotiations even if, like pension plans and income tax consequences, they make the process of reaching an agreement more complex.

**174 Second, Husband argues that the state and the parties need to rely on the finality of dissolution judgments. But California and federal law already permit such judgments to be set aside for fraud. Under state law, either spouse can attack the property division under a dissolution judgment on the ground that it was procured by extrinsic fraud. (Fam.Code, § 2122, subd. (a).) Under federal bankruptcy law, a bankruptcy trustee, acting in the interest of creditors, can set aside the property division of a dissolution judgment on the ground of fraud. (See *Britt v. Damson* (9th Cir.1964) 334 F.2d 896, 902; *In re Hope* (Bankr.D.Colo.1999) 231 B.R. 403, 415 & fn. 19, and cases cited.) Thus, while the law respects the finality of a property settlement agreement "that is not tainted by fraud or compulsion or is not in violation of the confidential relationship of the parties" (*Adams v. Adams* (1947) 29 Cal.2d 621, 624, 177 P.2d 265), we find no legislative policy to protect such agreements from attack as instruments of fraud.

[18] We therefore conclude, based on the policy considerations underlying the UFTA and the Family Code provisions governing dissolution judgments and settlements, that the UFTA applies to property transfers under MSA's. [FN2]

> FN2. *Gagan v. Gouyd, supra,* 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, is

disapproved to the extent it is inconsistent with this opinion.

### III. THERE IS NO TRIABLE ISSUE OF FACT AS TO CONSTRUCTIVE FRAUD

The Court of Appeal found triable issues of fact to both actual fraud and constructive fraud. review here, Husband challenges only the issue constructive fraud.

There are two forms of constructive fraud under the UFTA. Civil Code section 3439 subdivision (b) provides that a transfer fraudulent if the debtor did not receive reasona equivalent consideration and either "(1) V engaged or about to engage in a business c transaction for which the *670 remaining asset the debtor were unreasonably small in relation ***400 the business or transaction; or [¶] Intended to incur, or believed or reasona should have believed that he or she would in debts beyond his or her ability to pay as t became due." Civil Code section 3439 provides that a transfer is fraudulent as to existing creditor if the debtor does not rece reasonably equivalent value *and* "was insolver that time or ... became insolvent as a result of transfer...." Only the form of constructive fr defined in Civil Code section 3439.05 is at is here.

[19] Whether Husband here received equival value in the property division is a mate disputed fact, as the trial court recognized. constructive fraud under Civil Code sec 3439.05 also requires that the transferor insolvent at the time of the transfer, or rende insolvent by the transfer. We find no triable is of fact on the question of insolvency.

Under the UFTA's definition, a "debtor insolvent if, at fair valuations, the sum of debtor's debts is greater than all of the debt assets." (Civ.Code, § 3439.02, subd. (a).) determine solvency, the value of a debtor's as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

3 Cal.Rptr.3d 390  Page 11
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily Journal D.A.R. 9119
(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)

and debts are compared. By statutory definition, a debtor's assets exclude property that is exempt from judgment enforcement. (Civ.Code, § 3439.01, subd. (a)(2).) Retirement accounts are generally exempt. (Code Civ. Proc., § 704.115; see Yaesu Electronics Corp. v. Tamura (1994) 28 Cal.App.4th 8, 13-15, 33 Cal.Rptr.2d 283.) Here, when Husband's exempt retirement account is excluded, his sole postdissolution asset is his medical practice. That practice had a value as low as $72,000 at the time of the dissolution, according to plaintiff's appraisal evidence.

Plaintiff argued that the trial court should compare the value of Husband's medical practice (his sole nonexempt asset) to the present value of the entire child support obligation (his sole debt), which plaintiff's expert estimated at between $164,829 and $205,975, and determine that Husband was insolvent after he executed the MSA. The trial court rejected plaintiff's argument on the ground that the unmatured portion of plaintiff's child support claim could not be **175 fairly valued. The Court of Appeal disagreed. It held that Husband's child support debt should be taken into account at its present discounted value, and therefore it concluded that solvency, like consideration, was a triable issue of fact.

We disagree with the Court of Appeal's analysis. Although the UFTA recognizes an unmatured contingent claim as a debt (Civ.Code, § 3439.01, subds.(b), (d)), child support claims present a special case. Support payments usually are paid from present earnings, not liquidation of preexisting assets. The amount of payments owed is computed on the basis of monthly disposable income. (Fam.Code, § 4055, subd. (a).) This figure is *671 generally based on actual earnings, although the trial court has discretion to consider earning capacity instead of actual income (Fam.Code, § 4058, subd. (b)), and child support payments may be changed, in some cases retroactively, if there is a change in actual earnings or earning capacity. (Fam.Code, § 36 subd. (a); In re Marriage of Laudeman (2001) Cal.App.4th 1009, 1015, 112 Cal.Rptr.2d 3 [FN3]

> FN3. The statements in this paragraph the following two paragraphs generalizations. There are many spec provisions that affect the calculation child support, and our generalizations not intended to override or modify s specific provisions.

[20] Assets at the time of dissolution play l part in the computation of child support. T may enter indirectly into the calculation in ways: (1) In assessing ***401 earning capacit trial court may take into account the earni from invested assets (see, e.g., In re Marriag Cheriton (2001) 92 Cal.App.4th 269, 292, Cal.Rptr.2d 755); and (2) a court may deem as a "special circumstance" (Fam.Code, § 40 subd. (b)(5)) that may justify a departure from guideline figure for support payments (In Marriage of Loh (2001) 93 Cal.App.4th 325, 112 Cal.Rptr.2d 893). But these are exceptic situations; the child support obligation is ba primarily on actual earnings and earning capac

[21] Income not yet earned, however, is not asset under the UFTA unless it is subject to l by a creditor, as would be the case if, for exam the transferor possessed a promissory n payable at a future date. (See Civ.Code 3439.01, subd. (a)(2); Carter v. Carter (1942 Cal.App.2d 13, 15-16, 130 P.2d 186.) T Husband's future earnings, or his future earn capacity, would not appear on the balance shee offset his child support obligation.

We have found no cases that consider whe future child support obligations constitute a under the UFTA. In their briefs, the par discuss In re Labrum & Doak, (Bankr.E.D.Pa.1998) 227 B.R. 383, a bankruj

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

3 Cal.Rptr.3d 390 Page 12
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily Journal D.A.R. 9119
(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)

case involving whether future lease payments could be considered a debt, apparently the closest analogy they could find to the present case. The court there said: "[I]t is logical not to include all of the future rents as liabilities because this calculation miscategorizes the future rent liability as an obligation presently due in full.... [T]his would render any business with substantial projectable future expenses artificially deemed insolvent." (227 B.R. at p. 389.) But the parties dispute the meaning of this language. According to Husband, the court held that rents not yet due were not liabilities, while plaintiff claims that the court was concerned about only the failure to reduce future rent payments to present value.

[22] We conclude, however, that future child support payments should not be viewed as a debt under the UFTA. In construing statutes, we *672 avoid any interpretation that will lead to absurd consequences. (People v. Coronado (1995) 12 Cal.4th 145, 151, 48 Cal.Rptr.2d 77, 906 P.2d 1232.) To treat future child support payments as a debt, while not viewing the earning capacity from which they will probably be paid as an asset, would yield an absurd result. Relatively few parents of young children have current assets sufficient to pay the present discounted value of years and years of future support obligations. Thus, treating future child support as a current debt would label many persons with child support obligations as insolvent under the UFTA even though they were current on their child support obligations and will be able to pay future obligations as they became due. This insolvency, moreover, is of a wholly **176 artificial character, for the debtor cannot be compelled to convert future child support obligations into a present cash payment, and in fact generally cannot even voluntarily terminate liability for future support by paying the custodial parent the present value of such future payments. (See In re Marriage of Cheriton, supra, 92 Cal.App.4th 269, 111 Cal.Rptr.2d 755.) No legislative purpose is served by treating a parent as insolvent because child support obligations when that parent paid all payments currently due and can future payments from future earnings or earr capacity.

In light of our conclusion that future child sup payments should not be considered ***402 a under the UFTA, [FN4] Husband here was insolvent at the time of the transfer nor was rendered insolvent by the transfer. There is t no triable issue of fact as to constructive fra Actual fraud, however, remains a triable issue decision by the trial court.

> FN4. This reasoning would apply equ to future spousal support payments. take no position, however, on classification of other contingent installment payments.

DISPOSITION
The judgment of the Court of Appeal is rever and the cause is remanded for further proceedi

WE CONCUR: GEORGE, C.J., BAXT WERDEGAR, CHIN, BROWN and MOREI JJ.

31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 03 Cal. Daily Op. Serv. 7306, 2003 Daily Jou D.A.R. 9119

**Briefs and Other Related Documents (Back top)**

• 2003 WL 1918574 (Appellate Brief) DAN REED'S REPLY BRIEF ON THE MERITS (J 05, 2003)

• 2002 WL 32080719 (Appellate Brief) RHI MEJIA'S BRIEF ON THE MERITS (Dec. 2002)

• 2002 WL 31940297 (Appellate Brief) DAN REED'S OPENING BRIEF ON THE MER

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

3 Cal.Rptr.3d 390 Page 13
31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390, 03 Cal. Daily Op. Serv. 7306, 2003 Daily Journal D.A.R. 9119
**(Cite as: 31 Cal.4th 657, 74 P.3d 166, 3 Cal.Rptr.3d 390)**

(Oct. 01, 2002)

• 2002 WL 32334463 (Appellate Petition, Motion and Filing) Danilo Reed's Petition for Review (May. 09, 2002)

• 2002 WL 32334464 (Appellate Petition, Motion and Filing) Violeta Reed's Joinder in Petition for Review Filed by Respondent Danilo Reed (May. 09, 2002)

• S106586 (Docket) (May. 09, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

86 Cal.Rptr.2d 733                                                                                                         Page 1
73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, 99 Cal. Daily Op. Serv. 5866, 1999 Daily Journal D.A.R. 7472
(Cite as: 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733)

**Briefs and Other Related Documents**

Court of Appeal, Fourth District, Division 2, California.
James L. GAGAN, Plaintiff and Respondent,
v.
James E. GOUYD et al., Defendants and Appellants.
No. E021439.

July 22, 1999.

In an action to satisfy a judgment for intentional torts, judgment creditor alleged fraudulent transfers by judgment debtors to their spouses and alleged that certain assets were community property of debtor and nondebtor spouses. The Superior Court, Riverside County, No. 087713, Arthur S. Block, J., sitting by assignment, entered judgment for judgment creditor. Debtor and nondebtor spouses appealed. The Court of Appeal, Gaut, J., held that: (1) trust interest that nondebtor spouse received pursuant to marital settlement agreement was not liable for husband's debt to judgment creditor; (2) spouses' conveyance of property to revocable trust for which they were beneficiaries was not a "transfer," within the meaning of Uniform Fraudulent Transfer Act; and (3) nondebtor spouse did not establish that certain property was her separate property.

Affirmed in part, reversed in part.

West Headnotes

**[1] Appeal and Error ⇔893(1)**
30k893(1) Most Cited Cases
Appellate court reviews de novo any questions of law and the application of that law to the facts, since such questions can have a significance beyond the confines of the case then before the court.

**[2] Fraudulent Conveyances ⇔298(.5)**
186k298(.5) Most Cited Cases
In determining whether transfers occurred with fraudulent intent, court applies the preponderance of the evidence test.

**[3] Divorce ⇔255**
134k255 Most Cited Cases
Wife's interest in trust was not liable for judgment against husband for husband's intentional torts where wife received the interest from husband pursuant to marital settlement agreement and dissolution judgment and where the debt to judgment creditor was not assigned to wife as of the dissolution proceeding. West's Ann.Cal.Fam.Code § 916(a)(2).

**[4] Fraudulent Conveyances ⇔111**
186k111 Most Cited Cases

**[4] Fraudulent Conveyances ⇔112**
186k112 Most Cited Cases
Husband's and wife's conveyance of property to revocable trust for which they were beneficiaries was not a "transfer," within the meaning of Uniform Fraudulent Transfer Act's definition of transfer as disposing of or parting with an asset or an interest in an asset, as the property conveyed to the trust remained available to creditors after transfer. West's Ann.Cal.Civ.Code § 3439.01; West's Ann.Cal.Prob.Code § 18200.

**[5] Fraudulent Conveyances ⇔24(1)**
186k24(1) Most Cited Cases
Transfer of property from debtor spouse to nondebtor spouse as a part of a marital dissolution proceeding was not subject to Uniform Fraudulent Transfer Act. West's Ann.Cal.Civ.Code § 3439 et seq.; West's Ann.Cal.Fam.Code § 916(a)(2).

**[6] Fraudulent Conveyances ⇔24(1)**
186k24(1) Most Cited Cases
As a matter of policy, to engraft the fraudulent transfer remedies onto a valid and appro-

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

86 Cal.Rptr.2d 733                                                                                           Page 2
73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, 99 Cal. Daily Op. Serv. 5866, 1999 Daily Journal D.A.R. 7472
(Cite as: 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733)

marital settlement agreement would result in needlessly complicating the already emotional laden dissolution process.

[7] **Husband and Wife** ⇐264(3)
205k264(3) Most Cited Cases
Nondebtor spouse has the burden of proving by clear and convincing evidence that the disputed property is separate property rather than community property. West's Ann.Cal.Fam.Code §§ 760, 910(a), 913(b)(1).
**734 *837 E. Day Carman, Newport Beach, for Defendants and Appellants.

Michael Zitomer, Palm Springs, for Plaintiff and Respondent.

*838 OPINION

GAUT, J.

1. *Introduction*

On November 23, 1994, James L. Gagan (Gagan) obtained a judgment against James E. Gouyd (James) and Victor Sharar (Victor) for $1,687,500. He sought to satisfy that judgment against James and his wife Constance and against Victor and his wife Mary Lois. Gagan asserted that both couples had made various property transfers which he concluded were fraudulent as defined by the Uniform Fraudulent Transfer Act (Civ.Code, §§ 3439.01 et. seq.) [FN1] Gagan filed this action, seeking an order setting aside those transfers.

>   FN1. All further statutory references are to the Civil Code, unless otherwise stated.

James and Constance, formerly husband and wife, appeal from a judgment in favor of Gagan that found that the transfer of assets between them under a marital settlement agreement entered in connection with the dissolution of their marriage was a fraudulent conveyance.

Victor and Mary Lois appeal from a judgment in favor of Gagan which found that assets claimed by Mary Lois were community property, separate property as she claimed, and there were subject to the claims of Gagan as a judgm creditor of Victor.

We reverse the judgment against James Constance because we find that a transfer assets provided in a marital settlement agreem is not a fraudulent conveyance. We affirm judgment against Victor and Mary Lois beca we find that the property sought by Gagan community property and was subject to creditor's levy.

2. *Facts*

Gagan sued Victor and James, among others United States District Court for the North District of Indiana on December 31, 19 alleging, in part, a violation of the Racke Influenced and Corrupt Organizations Act. U.S.C. §§ 1961 et seq.) A judgment was ente against them on November 23, 1994, $1,687,500, after a July 20, 1994 jury verdict.

On February 26, 1996, Gagan filed an ac against Victor and Mary Lois, individually and trustees of the VMS 1992 **735 Trust, against James and Constance, individually and trustees of the Lakeview 1993 Trust, to set as fraudulent transfers. Gagan alleged that James Constance *839 fraudulently transferred 1 Riverside County parcels of real property into revocable Lakeview 1993 Trust on May 5, 19 and that James fraudulently transferred the en Lakeview 1993 Trust to Constance by a mar settlement agreement dated September 1, 19 The marriage of James and Constance dissolved on December 22, 1994, by a co decree.

Gagan also alleged that Victor and Mary I. created the revocable VMS 1992 Trust on Apr 1992 and in December 1994 and January 19 they transferred various items of commu personal property into the VMS 1992 Trust v.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

86 Cal.Rptr.2d 733                                                                                                   Page 3
73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, 99 Cal. Daily Op. Serv. 5866, 1999 Daily Journal D.A.R. 7472
**(Cite as: 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733)**

the intent to hinder, delay, or defraud their creditors.

Gagan also alleged separate counts of conspiracy against each couple.

On August 20, 1997, the trial court entered judgment against both couples on the counts for fraudulent conveyance, ordered the challenged transfers be set aside, and imposed a constructive trust on those assets for the benefit of Gagan. The trial court entered judgment in favor of both couples on Gagan's conspiracy counts.

### 3. *Standard of Review*

"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record,* there is substantial evidence, contradicted or uncontradicted, which will support the determination...." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, 197 Cal.Rptr. 925, original italics.) In applying the substantial evidence test, this court resolves all issues of credibility and conflicts in the evidence in favor of the judgment. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925, 101 Cal.Rptr. 568, 496 P.2d 480.)

[1] In this case we apply the substantial evidence rule to the determinations of fact by the trial court. We review de novo any questions of law, and the application of that law to the facts since such questions can have a significance beyond the confines of the case then before the court. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800-801, 35 Cal.Rptr.2d 418, 883 P.2d 960.)

[2] In determining whether transfers occurred with fraudulent intent, we apply the preponderance of the evidence test (*Whitehouse v. Six Corp.* (1995) 40 Cal.App.4th 527, 530, 48 Cal.Rptr.2d 600), even though we recognize that some courts believe that the test requires clear and convincing evidence. (*Reddy v. Gonzalez* (199[?] Cal.App.4th 118, 123, 10 Cal.Rptr.2d 55.)

### *840 4. *Community Liability for Debts of Vic[?] and James*

The general rule is that the assets of community are liable for the debts of either p[?] to the marriage, incurred during the marri[?] (Fam.Code, § 910, subd. (a).) There exceptions to that general rule. The separate as[?] of the non-debtor spouse may not be used satisfy such debts. (Fam.Code, § 913, su[?] (a)(2).) Mary Lois relies upon this section in appeal.

Community property transferred to the non-del[?] spouse as part of the distribution of commu[?] assets upon dissolution of the marriage [?]s liable for the debts of the debtor spouse unless non-debtor spouse was assigned responsibility all or some portion of the debt. (Fam.Code, § [?] subd. (a)(2).) Constance relies upon the l[?] section in her appeal from the trial c[?] judgment.

### 5. *Gagan's Claim of Fraudulent Conveyanc[?]*

California's Uniform Fraudulent Transfer Act 3439 et seq.) provides that a **736 creditor r[?] avoid a transfer made with the "actual inten[?] hinder, delay, or defraud any creditor of debtor," (§ 3439.04, subd. (a)) or a transfer m[?] without receiving reasonably equivalent valu[?] exchange at a time when the debtor was i[?] business for which the remaining assets w[?] unreasonably small in relation to the business, debtor intended to incur debts beyond his ab[?] to pay as they became due, or the debtor made transfer without receiving equivalent value [?] was insolvent at the time or became insolvent [?] result of the transfer. (§§ 3439.04, 34[?]9 3439.07.)

The Uniform Fraudulent Transfer Act def[?]ne creditor as a person who has a right to paym[?] whether or not the right is reduced to judgmen[?]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

86 Cal.Rptr.2d 733                                                                                               Page 4
73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, 99 Cal. Daily Op. Serv. 5866, 1999 Daily Journal
D.A.R. 7472
(Cite as: 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733)

is disputed. (§ 3439.01, subds.(b) and (c).)

In this case, Gagan filed his original action against James and Victor in 1987 and therefore he was a creditor of James and Victor before either established a trust. If transfers were made to those trusts with the intent to hinder, delay, or defraud Gagan, then those transfers would be subject to an order setting them aside under section 3439.07. Likewise, if James' 1994 transfer of his interest in the trust to Constance pursuant to their marital settlement agreement and dissolution judgment was made with the intent to hinder, delay, or defraud Gagan, that too could be set aside, unless Family Code section 916 applies.

### 6. *Gouyd Transfers*

[3] The trial court found that the conveyances of James and Constance of real and personal property to the Lakeview 1993 Trust and James' later *841 conveyance of the trust to Constance were fraudulent. As a remedy, the trial court imposed a constructive trust of all assets in the trust for the benefit of Gagan. Since the property transferred to Constance was a distribution of community assets in connection with the dissolution of her marriage, the issue is whether that transfer can be set aside under sections 3439 et seq.

James and Constance contend Family Code section 916 precludes the trial court from setting aside the trust transferred to Constance under the terms of their marital settlement agreement.

Family Code section 916 provides that "... the property received by the person in the division [of community assets] is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property." (Fam.Code, § 916, subd. (a)(2).)

In *In re Marriage of Braendle* (1996) 46 Cal.App.4th 1037, 54 Cal.Rptr.2d 397, colleagues in the Second Appellate District fo that Family Code section 916 applied where trial court directed stock to be held by a tl party for the wife as security for the husba obligation to make an equalization payment to wife as a part of the dissolution of their marri The dissolution and stock assignment occurre 1991, but the dissolution judgment was entered before a creditor of the husband obtai a judgment against him alone. The creditor sou to enforce the judgment by levying upon the st held as security for the wife. The court found "[o]nce the marriage was dissolved and divi of community property had occurred, ... provisions of section 916 of the Family C control." (*In re Marriage of Braendle, supra*, Cal.App.4th at p. 1042, 54 Cal.Rptr.2d 397.) creditor was precluded from levying upon stock.

In *Lezine v. Security Pacific Fin. Services*, (1996) 14 Cal.4th 56, 65, 58 Cal.Rptr.2d 76, P.2d 1002, the California Supreme Cc referring to former section 5120.160, predecessor of Family Code section ' observed: "[U]nder this provision, following division of property, the community prop awarded to one spouse no longer is liable marital debts that are assigned to the other spo with the exception that the **737 award community real property to one spouse tha subject to a lien remains liable for satisfaction the lien, i.e., the lien remains enforceable satisfy the underlying debt."

*Braendle* and *Lezine* support the claim of Ja and Constance that the property transferrec Constance as a part of the dissolution procec is not available to satisfy Gagan's judgment opposition, Gagan argues that *842 Family C section 916 does not apply when property been fraudulently transferred from husband wife. He argues that the trial court found that t

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

86 Cal.Rptr.2d 733                                                                                                       Page 5
73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, 99 Cal. Daily Op. Serv. 5866, 1999 Daily Journal D.A.R. 7472
(Cite as: 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733)

James and Constance fraudulently transferred property into the trust and then James fraudulently transferred his interest in the property held in trust to Constance. Gagan dismisses the *Braendle* case because the division of the community property occurred three years prior to the creditor's judgment against the husband, whereas in this case the judgment was entered the month before the dissolution judgment, and six months after the parties entered the marital settlement agreement.

[4] We reject Gagan's interpretation of Family Code section 916 for the following reasons. First, the transfer of the property to the Lakeview 1993 Trust was not a fraudulent transfer because Constance and James remained the beneficiaries. Section 3439.01, subdivision (i) defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset...." In this case, the transfer by James and Constance did not result in "disposing of or parting with an asset or an interest in an asset." The property remained available to creditors. There is no evidence in this case that the transfer by James and Constance to a revocable trust of which they were the beneficiaries rendered the property unavailable to the creditors. Property in a revocable trust is subject to creditor claims to the extent of the debtor's power of revocation. (Prob.Code, § 18200.) Hence, the trial court erred in finding that transfer of the real property to the trust was a fraudulent conveyance.

[5] Second, James' transfer of the assets held by the trust to Constance occurred in connection with the dissolution of their marriage. Although there is authority which holds that transfers between spouses are subject to the laws governing fraudulent transfers (see *Reddy v. Gonzalez, supra,* 8 Cal.App.4th 118, 120, 10 Cal.Rptr.2d 55; *Hansford v. Lassar* (1975) 53 Cal.App.3d 364, 374, 125 Cal.Rptr. 804), neither party has cited any authority which holds that transfers as a part of a dissolution proceeding are subject to the sa laws.

Third, the Gagan debt, apparently incurred as result of James' tort, was not assigned Constance as a part of the dissolution proceed Constance therefore should not be held liable the intentional tort of James. (*In re Marriag Bell* (1996) 49 Cal.App.4th 300, 309, Cal.Rptr.2d 623.)

[6] Fourth, as a matter of policy, we believe to engraft the fraudulent transfer remedies on valid and approved marital settlement agreen would result in needlessly complicating already emotional laden dissolution process might result in the unraveling of a dissolu agreement *843 painstakingly negotiated betw the parties and their attorneys. We do not c the rights of an alleged defrauded creditor that absent the express intent by the Legislature to so. Gagan has provided us with no evidence such intent.

Hogoboom & King, California Practice Gui Family Law (The Rutter Group 1999) at p. 8- comments as follows as to the liability c nondebtor spouse: "... *unless the nondel spouse was assigned the debt* by the prop division judgment, he or she is *not person liable* thereafter for the other spouse's d incurred before or during marriage. The nonde spouse's separate property *and his or her shar the community estate* awarded**738 by dissolution judgment may be reached by credi *only* if payment of the debt was *assigned* to nondebtor spouse in the property divisio (Original italics.)

Constance was the nondebtor spouse. As a ma of law, the trial court erred in concluding that property she received as a part of the marri dissolution was subject to the judgment of Gag

*7. Sharar Transfers*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

86 Cal.Rptr.2d 733                                                                                                                   Page 6
73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, 99 Cal. Daily Op. Serv. 5866, 1999 Daily Journal
D.A.R. 7472
(Cite as: 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733)

The trial court found that the December 1994 and January 1995 transfers by Victor to Mary Lois were fraudulent as to a limited partnership interest in Apache Cablevision, the PaineWebber account, the VMS 1992 Trust, and the First Interstate checking account. It ordered the transfers set aside as to Gagan to the extent necessary to satisfy Gagan's claims and ordered all such assets held in constructive trust for the benefit of Gagan.

The only issue raised by Mary Lois on appeal is whether her interest in the Apache Cablevision limited partnership was her separate property, or whether it was community property. If it was her separate property, it would not be liable for Victor's debt. (Fam.Code, § 913, subd. (b)(1).) If it was community property, it was liable for the debts of Victor. (Fam.Code, § 910, subd. (a).)

[7] To support her claim that the Apache Cablevision limited partnership interest was separate property, Mary Lois apparently relies solely on the testimony of Victor. However, the presumption is that property acquired by married persons during the marriage is community property. (Fam.Code, § 760.) Mary Lois has the burden of proving by clear and convincing evidence that the property is separate, not community. (*In re Marriage of Ashodian* (1979) 96 Cal.App.3d 43, 47, 157 Cal.Rptr. 555.) She relied upon the testimony of Victor, which did not carry that burden. He testified that *844 Mary Lois and he had been married for 25 years, and that the interest in Apache Cablevision was acquired during their marriage. Neither Victor nor Mary Lois cite any evidence supporting their claim that the interest of Mary Lois was her separate property. On the other hand, there was substantial evidence to support the trial court finding that the property was community property, including Victor's admission of that fact.

We have some difficulty in understanding why the case against Victor and Mary Lois was couched in terms of fraudulent conveyance. All of the property they held, whether in a revocable tr[ust] or in the names of Victor or Mary Lois alone, [was] community property and therefore available [to] satisfy Gagan's judgment. Victor's transfer [of] property to Mary Lois therefore was no[t a] "transfer" within the meaning of the Unif[orm] Fraudulent Transfer Act (§ 3439.01, subd. [...] because it did not dispose of or part with an a[sset] or an interest in an asset (*ibid.*) with the "inten[t to] hinder, delay, or defraud" Gagan. (§ 3439[.04,] subd. (a).) The Sharars retained their assets an[d they] were available to satisfy the judgment of Ga[gan.] Nevertheless, the trial court's order imposin[g a] constructive trust of those assets for the benefi[t of] Gagan was not prejudicial.

### 8. *Disposition*

The judgment setting aside the transfer of as[sets] from James to Constance pursuant to the ma[rital] dissolution agreement and imposing [a] constructive trust on those assets for the benef[it of] Gagan is reversed. The judgment in favor [of] James and Constance on the third count [for] conspiracy is affirmed. Costs are awarded [to] James and Constance.

The judgment setting aside the transfer of as[sets] from Victor to Mary Lois and imposin[g a] constructive trust on those assets for the benef[it of] Gagan is affirmed. The judgment in favor [of] Victor and Mary **739 Lois on the fourth c[ount] for conspiracy is affirmed. Costs are awarde[d to] Gagan.

HOLLENHORST, Acting P.J., and WARD[, J.,] concur.

73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, 9[9 Cal.] Daily Op. Serv. 5866, 1999 Daily Journal D.[A.R.] 7472

**Briefs and Other Related Documents (Back [to] top)**

- 1999 WL 33722411 (Appellate B[rief)]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

86 Cal.Rptr.2d 733 Page 7
73 Cal.App.4th 835, 86 Cal.Rptr.2d 733, 99 Cal. Daily Op. Serv. 5866, 1999 Daily Journal D.A.R. 7472
**(Cite as: 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733)**

Defendants/Appellants' Closing Brief (May. 31, 1999)

- 1999 WL 33722410 (Appellate Brief) Respondent's Opening Brief (Apr. 19, 1999)

- 1999 WL 33722502 (Appellate Brief) Appellants' Opening Brief (Mar. 19, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11456-RWZ

| | |
|---|---|
| GENERAL ELECTRIC MORTGAGE INSURANCE CORPORATION,<br><br>      Plaintiff,<br>      Judgment Creditor,<br><br>v.<br><br>CHI CHEN<br>A/K/A CHI CHEN HU,<br>A/K/A TRACY CHEN<br>CHENG YIH HU,<br>a/k/a MICHAEL HU,<br><br>      Defendants,<br>      Judgment Debtors. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

### AFFIDAVIT OF RICHARD W. GANNETT

1. My name is Richard W. Gannett. I am licensed to practice law in the Commonwealth of Massachusetts and I am a member of the Bar of this Honora' Court.

2. Members of my family and I have continuously practiced law in the Commonwealth of Massachusetts since 1937.

3. I have represented General Electric Mortgage Insurance Corporation ("GEMIC since approximately 1990.

4. On July 6, 2005, I wrote a letter to Attorney Michael B. Feinman ("Feinman") indicating that a motion to cancel the evidentiary hearing and a separate lawsui

may be filed so that there would be no surprise to Feinman or his client. This redacted letter is appended.

5. On July 12, 2005, Feinman acknowledged receipt of the July 6, 2005 letter. The redacted letter is appended.

6. On July 19, 2005, I conducted a telephone conference with Feinman under Local 7.1(A)(2) concerning a request and discovery to cancel or adjourn the evidentiary hearing. In particular, during this conference, I requested Feinman's assent to cancel or adjourn the evidentiary hearing based upon the July 6, 2005 letter and the newly discovered evidence including but not limited to the content of the divorce file, Cheng Yih Hu's interest in the Silicon Valley house, and the source of funds to pay for the Silicon Valley mortgage, the conversations with Attorney Andrew H. Wu, and the land records recorded in the Santa Clara County Recorder of Deeds concerning the Silicon Valley house and substantive California divorce law. Feinman did not provide his assent.

7. I conducted the conference with Feinman as a prelude to the motion to cancel or adjourn the hearing.

8. Based upon the demands of my other clients, the Complaint in the Superior Court and the motion to cancel or adjourn was not finalized until August 4, 2005.

9. Based upon my understanding of the Federal Rules of Civil Procedure and, in particular, this District's Local Rules, the July 6, 2005 letter and the July 19, 2005 conference served as both proper and adequate notice that my client's motion to cancel or adjourn would shortly be filed and that July 6, 2005 letter and the July

2

19, 2005 conference would provide Ching Yee M. Tsui some six weeks notice

GEMIC's intent to cancel or adjourn the evidentiary hearing.

Signed under the penalties of perjury this 16th day of September, 2005.

_____
Richard W. Gannett



**GANNETT & ASSOCIATES**
ATTORNEYS AT LAW
165 FRIEND STREET, SUITE 200
BOSTON, MA 02114-2025

(617) 367-0606
FAX (617) 367-2121

July 6, 2005

Michael B. Feinman, Esq.
Feinman Law Offices
23 Main Street
Andover, MA 01801

    Re:   General Electric Mortgage Insurance Corporation v. Chi Chen
            United States District Court for the District of Massachusetts
            <u>Civil Action No. 04-11456-RWZ</u>

Dear Atty. Feinman:

    To ensure there is no surprise to you or your client, our client may initiate an action against Ms. Tsui and seek to vacate or adjourn the August 15, 2005 hearing date

                                         Thank you.

                                         Very truly yours,

                                         Richard W. Gannett

*WITHOUT PREJUDICE FOR SETTLEMENT PURPOSES ONLY*

# FEINMAN LAW OFFICES

*Business & Trial Law*

The Fleet Bank Building
23 Main Street, Andover, Massachusetts 01810
Telephone: (978) 475-0080

Fax: (978) 475-0:
URL: http://www.feinmanlaw.:

Michael B. Feinman*    Email: mbf@feinmanlaw.com
Stephen P. Shannon*    Email: sps@feinmanlaw.com

*Admitted in Massachusetts and New Hampshire

July 12, 2005

Richard W. Gannett, Esq.
Gannett & Associates
165 Friend Street, Suite 200
Boston, MA  02114-2025

Re:  General Electric Mortgage Insurance Corporation
     v. Chi Chen a/k/a

Dear Mr. Gannett:

I am in receipt of your letter of July 6, 2005.

Thank you for your attention regarding this matter.

Very truly yours,

Feinman Law Offices

Michael B. Feinman

MBF:psw
cc: Millor Tsui

04x3791\ltgannett7-12-05.doc